**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas HOSKIE, Defendant–Appellant.**

No. 89–10348.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1990.

Decided Dec. 6, 1991.

David Lee Titterington, Deputy Federal Public Defender, Phoenix, Ariz., for defendant-appellant.

Janet L. Patterson, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before CHOY, TANG and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Thomas Hoskie asks us to reverse his convictions for assault, sexual abuse, and kidnapping. He claims that the district court erred in finding him competent to stand trial and in refusing to instruct the jury on the defense of insanity. We find clear error in the district court's determination that Hoskie was competent to stand trial and therefore reverse the conviction.

## I. Factual and Procedural Background

On November 9, 1987, 17–year–old Arminda Jane Yoe accepted a ride from appellant Hoskie. At some point, Hoskie turned off the road on which they were driving, stopped the truck, and began to physically and sexually assault Arminda. Hoskie then tied his belt around her neck, led her back to the truck, and made her crouch down on the floor while he drove to a different location. At the second, more remote location, Hoskie forced Arminda to have sex with him, hitting and kicking her in the process. Hoskie also allegedly shot at Arminda. Eventually Hoskie passed out from liquor consumption and Arminda escaped, after checking Hoskie's wallet to determine his identity. Hoskie subsequently was indicted for aggravated sexual abuse in violation of 18 U.S.C. §§ 1153 and 2241(a) and (b), kidnapping in violation of 18 U.S.C. §§ 1153 and 1201(a)(2), assault with a deadly weapon in violation of 18 U.S.C. §§ 1153 and 113(c), and assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 1153 and 113(f).

Hoskie filed a motion to determine competency to stand trial pursuant to 18 U.S.C. § 4241(a). A magistrate conducted the first competency hearing on September 22, 1988. The principal witnesses were Dr. Tatro, a psychologist who had examined Hoskie on behalf of the defense, and Dr. Grossman, a government psychologist. Officer Bluehouse of the Bureau of Indian Affairs, who had arrested Hoskie and participated in the investigation, and Hoskie's mother also testified. The two psychologists agreed that Hoskie was mildly mentally retarded (both recorded IQ scores on various examinations of approximately 62–65) and suffered from alcoholism and a dependent personality disorder. Both agreed that Hoskie cooperated in testing and that he was not feigning lack of intelligence or manipulating the evaluator.[1] The psychologists differed, however, in their ultimate opinions of Hoskie's competence to stand trial. The magistrate summarized their views as follows in his questioning of Dr. Tatro:

> [I]t seems to me that really your evaluations, the two of you, are basically the same in terms of what's wrong with him; there's no psychosis involved, it's a mental defect; it's a mild mental retardation with alcoholism involved. And Doctor Grossman also believes that it seems like the defendant doesn't really understand

---

1. Dr. Grossman offered "a hypothesis" that there was "potential for manipulation," but eventually acknowledged under cross-examination that the evaluation "did not suggest that Mr. Hoskie was attempting to cover things up ... [or] manipulating the evaluator." The magistrate expressly indicated at the hearing that he would not make a finding based on a hypothesis, and there was nothing in either the magistrate's or district court's order to indicate that the competency determination relied on a finding that Hoskie was malingering.

the proceedings at this time.... The basic difference appears to be that he thinks with some help the defendant could understand the proceedings and assist counsel and you think with some help he couldn't ...

Dr. Tatro concurred with the magistrate's summary.

The magistrate concluded in a written order filed September 27, 1988, that Hoskie was "minimally able to understand the proceedings against him, and the consequences thereof, as well as to assist properly in his defense." Accordingly, the magistrate found Hoskie competent to stand trial "with some effort and with the assistance of an interpreter." The magistrate noted, however, that "defendant is extremely limited in his ability to conceptualize and virtually incapable of thinking in abstract terms" and characterized the degree to which Hoskie understood court proceedings as "extremely limited."

■ On November 1, 1988, Hoskie renewed his motion to determine his competency to stand trial and filed a notice that he intended to present an insanity defense. The district court conducted a second competency hearing, at which Hoskie and the Navajo interpreter testified. The parties agreed to rely on the earlier testimony of the psychologists before the magistrate rather than having them testify again. At the hearing the district court expressed a concern that essentially went to Hoskie's danger to the community, not his competence to stand trial. The court stated that even if Hoskie might not understand the proceedings, he would understand "how to get home, ... how to get to Gallup, ... how to borrow money, ... how to get alcohol, ... how to get drunk and ... how to assault somebody else. He may not know a lot of the other sophisticated things that the Government says he has to do, but he knows all those things...." The district

court did elicit from the government an acknowledgment that there "are difficulties insofar as the record is concerned regarding Mr. Hoskie's competency to ... understand all the sophistications of where we are." Ultimately, however, the district court found Hoskie competent to stand trial.[2] The court did appoint a second, Navajo-speaking attorney to assist in Hoskie's representation.

The district court continued to manifest concern about Hoskie's competence at several points during subsequent pretrial and trial proceedings. During pretrial discussions, the district court asked the Navajo attorney about his ability to communicate effectively with Hoskie. Counsel indicated that he had "had difficulty trying to get him to understand the proceedings against him," that Hoskie could understand concepts carefully explained to him "basically for a very short duration," and that "it [was] very hard to work with [Hoskie] to even try to prepare the case." R.T. 12. During the same proceeding, the district court raised the possibility of having Hoskie committed and indicated its view that "common sense tells us that perhaps that is what we should be doing here now." R.T. 21.

At the outset of trial, defense counsel renewed the motion to find Hoskie incompetent. Counsel informed the district court that when they sat down to prepare Hoskie for trial he responded, "I thought that already happened, already, that is why I am in jail." R.T. 159. The court noted that because Hoskie had blacked out due to intoxication and denied having any recollection of the event, it had "difficulty in understanding, [even] if Mr. Hoskie was a Rhodes scholar with that problem, how he could do anything to assist counsel." R.T. 160–61. The court also indicated from its own observations of Hoskie in court that "if nothing else, Mr. Hoskie has an aware-

---

**2.** There are several indications in the record that the district court at some point found Hoskie incompetent to enter a guilty plea. Under Ninth Circuit law, it is possible to be found incompetent to plead but competent to stand trial, because the applicable standards are different. *See Chavez v. United States,* 656 F.2d 512, 518–19 and n. 3 (9th Cir.1981); *de Kaplany v. Enomoto,* 540 F.2d 975, 985 (9th Cir.1976) (en banc), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977). The question of Hoskie's competence to plead is not before us in the present case.

ness of where he is and the kind of thing that is occurring." R.T. 162. Again, the court referred to commitment and suggested that that might be the appropriate outcome:

> [I]f there is sufficient concern about Mr. Hoskie's condition, that we are going to have an appeal, someone is going to have to look at it on an appeal and when all is said and done, Mr. Hoskie is going to go away under the [commitment] procedures that we talked about yesterday.
>
> In some ways, it seems like that ought to happen. I think, in my own judgment, looking at Mr. Hoskie's record, that he is a danger to other people. And that he is perfectly capable, as demonstrated by his past record, to go back on the reservation with the mental acuity that he does have, he's going to drive his vehicle, he's going to pawn something, he's going to get alcohol, he's going to get in a group or individually and he is either going to kill somebody on the highway or he's going to assault them or try and rape them. So that is the bottom line.

R.T. 165–66. When defense counsel pointed out that Hoskie's dangerousness was "secondary to the issue we are talking about, which is whether [Hoskie] is competent or not," and that the court must "decide the competence issue first" before dangerousness comes into play, the court responded: "I am suggesting now, for instance, despite the Government's position, despite what I have said, the Government might very well want to look at some kind of an agreement with defense counsel to put Mr. Hoskie on a different track." R.T. 166. Ultimately, however, the district court denied Hoskie's renewed motion to be determined incompetent "without prejudice to its being renewed at other times." R.T. 168.

The case proceeded to trial. Hoskie did not challenge the basic facts alleged, but proffered an insanity defense and argued that his mental defects prevented him from forming the requisite mens rea for the crimes. Despite the fact that both the defense and prosecution focused entirely on issues of Hoskie's comprehension and daily functioning, the district court denied an insanity instruction, finding that it was not sufficiently supported by the evidence. The jury convicted Hoskie of all counts except the assault with a deadly weapon charge, of which he was acquitted.

At the sentencing hearing, the district court again indicated a view that perhaps the commitment process was more appropriate to the situation, and that concerns regarding Hoskie's dangerousness had been a motivating force behind its decision-making:

> Well, it is difficult, as you say, certainly to really know Mr. Hoskie's awareness about the events.
>
> I confess that throughout the time that Mr. Hoskie has been with me, I have … observed different demeanors on occasion.
>
> As he stands here today he looks like he did during the trial, and I think I noted, perhaps not on the record, when the case was over and he walked out, he looked like an entirely different person. His head was up, he talked to somebody and he walked out.
>
> One of the things I had considered doing and didn't really pursue it, perhaps, as I should have, and that is under the procedures to commit Mr. Hoskie and have him sent away for some other evaluation, because as I say the principal concern I have is *that Mr. Hoskie may not operate so well in the environment of the courtroom, I think he operates more effectively in the environment of the reservation, and that is where he would go at some time and [be] put back in these situations, at least as it was here with this victim.*

R.T.S. 12 (emphasis added). At the conclusion of the hearing, the court sentenced Hoskie to serve 180 months in prison and to a term of supervised release of 60 months.

Hoskie filed a timely notice of appeal. He challenges his conviction on grounds that he was incompetent to stand trial and that the district court erred in denying him an insanity instruction. Because we re-

verse on the ground of incompetency, we do not reach the insanity issue.

## II. Discussion

■ A defendant is incompetent to stand trial if the court finds "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense...." 18 U.S.C. § 4241(d). A district court's finding that a defendant is competent to stand trial is a question of fact which we review for clear error. *United States v. Frank*, 933 F.2d 1491, 1493 (9th Cir.1991); *United States v. Lindley*, 774 F.2d 993, 993 & n. 1 (9th Cir.1985). We are required to consider the evidence in the light most favorable to the government. *Frank*, 933 F.2d at 1493.

■ The test that must be applied in determining competency to stand trial is set forth in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). There the Court held:

> [I]t is not enough for the district judge to find that "the defendant [is] oriented to time and place and [has] some recollection of events," but that the "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."

*Id.* at 402, 80 S.Ct. at 788. *Accord, de Kaplany v. Enomoto*, 540 F.2d at 979. The government has the burden of demonstrating by a preponderance of the evidence that the defendant is competent to stand trial. *Frank*, 933 F.2d at 1494 (citing *United States v. Hutson*, 821 F.2d 1015, 1018 (5th Cir.1987)).

■ Taking the evidence in a light most favorable to the government, we find that the district court committed clear error in finding that the government met its required burden. Our finding of clear error turns in part on our sense that the district court itself was not convinced that Hoskie

was competent, but was unwilling to find incompetency in light of its firm conviction that Hoskie posed a danger to society. More fundamentally, however, the testimony of the government expert failed to address the principal concerns of the competency inquiry, i.e. whether Hoskie could comprehend and retain explanations of the judicial process so as to participate effectively in his trial.

The defense expert, Dr. Donald Tatro, examined Hoskie for approximately three hours, administering the verbal scale of the Wechsler Adult Intelligence Scale, Revised ("WAIS–R"), the Bender Visual–Motor Gestalt Test, Figure Drawing Test, and Sentence Completion Test. He recorded a verbal IQ of 62. In addition, Dr. Tatro reviewed a wide range of documentary materials related to Hoskie and to the crime, including police reports, hospital reports and school documents. Prior to the competency hearing, Dr. Tatro also reviewed the report prepared by Dr. Grossman.

Dr. Tatro concluded and testified to his opinion that Hoskie was incompetent to stand trial. More specifically, he testified that Hoskie had no ability to understand abstractions like guilt, innocence or rights. He gave examples of the interpreter spending 15 minutes explaining the concept of a jury to Hoskie in the simplest terms, at which point Hoskie evidenced "a glimmer" of understanding; five or ten minutes later, Hoskie would have no recollection or understanding of what a jury was. Dr. Tatro explained Hoskie's level of comprehension as follows: "[I]f they say, 'You did it, you'll go to jail; if they say you didn't do it, you won't go to jail' ... They say you're a bad boy and are wrong and you get punished or they say you're a good boy and we're not going to punish you, that's how he understands it." When asked by the court whether Hoskie could move beyond that point to some understanding of the trial process, Dr. Tatro indicated that when he and the interpreter had spent a very long period of time going over the concepts with Hoskie, they had reached a point where he appeared to have a rudimentary understanding, but five minutes

later, any understanding would have evaporated. The interpreter's testimony at the second hearing confirmed that Hoskie required careful and simple explanation to understand the trial process at all, and that he would not retain even those explanations after a few minutes.

Dr. Grossman's report and testimony were not appreciably different except as to the ultimate conclusion. Dr. Grossman recorded a full-scale IQ of 65 on the WAIS–R. He recorded a lower verbal IQ (60) than did Dr. Tatro, which was balanced out by a performance IQ of 74, which is in the borderline range of intellectual functioning. The government places great emphasis on the fact that certain subtests of the WAIS, which do not focus on verbal skills and are believed to be less culturally biased, show Hoskie to be in the borderline range of functioning. As Dr. Tatro pointed out, however, the trial process is essentially verbal in nature and is saturated with cultural constructs. A test which eliminates verbal and cultural bias is, therefore, not a good predictor of Hoskie's ability rationally and factually to comprehend the trial process. Moreover, Dr. Grossman also administered a Revised Beta Examination Second Edition (Beta–II), which purports to have less cultural bias than the WAIS. He evaluated Hoskie's Beta IQ to be less than 60 (the test records no score lower than 60).

Like Dr. Tatro, Dr. Grossman had the interpreter explain portions of the judicial process to Hoskie in simple terms. When asked to explain the judicial process based on the examiner's explanation, Hoskie stated, "People will show up and discuss my situation and then sentence me." He was able to explain that what happens if you break the law is that you go to jail. He likewise was able to explain that the defense attorney speaks for him. However, there was nothing in either Dr. Grossman's report or his testimony to indicate that he checked Hoskie's understanding after some time elapsed to determine whether he could retain this rudimentary understanding. Moreover, the fact that a defendant understands the very basic notion of punishment is an insufficient basis for concluding that he has a rational and factual understanding of the trial process and an ability to consult with his lawyer and assist in his defense.

Dr. Grossman's conclusion that Hoskie was competent to stand trial rested in significant part on his observations of Hoskie's ability to function on a daily basis. Because Hoskie had a common-law wife and child, could drive a truck to various points without getting lost, understood how to pawn items to receive cash, and had one brief period of employment, Dr. Grossman concluded that Hoskie "has been able to function with some effectiveness and independence as an adult in the community." It bears noting that Hoskie's daily universe was an extremely limited one. He grew up and continued to live with his mother or his mother-in-law in a remote area of the Navajo reservation called Blue Canyon, which is little more than a trading post surrounded by a few widely dispersed families. Unlike his seven brothers and sisters who all attended boarding school, Hoskie was diagnosed as retarded at a fairly early age and placed in special education. He achieved no more than a second- or third-grade level. Hoskie assisted with family chores when told what to do, borrowed his brother's truck and drove to a few regular places on the reservation, engaged in simple pawn transactions, and partook in some socializing which appeared largely to involve drinking. However, he was unable to remember his son's name, how old he was when his father died, or what grade he completed in school.

We are not persuaded that evidence of basic functioning and ability to undertake mechanical tasks correlates in a meaningful way with a defendant's ability factually and rationally to understand the judicial process and consult with his lawyer. There is simply nothing in the record to support a finding that Hoskie could or did understand the trial process. Hoskie's own testimony, which consisted largely of his responding, "I guess" or "I don't understand," does nothing to alter that conclusion. Defendants whom we have found competent typically demonstrate considerably more comprehension. In *United States v. Frank*, 933 F.2d at 1497, the defendant testified

during the competency proceeding that a defense lawyer is someone who helps you and a prosecutor does not help you; in addition, prior to being advised of his rights, Frank had volunteered to the police officer, "you know, you have the right to remain silent." The defendant in *United States v. Glover*, 596 F.2d 857, 859, 864–65 & n. 13 (9th Cir.), *cert. denied* 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81 (1979), was held competent to waive his *Miranda* rights despite his IQ of 67 in light of testimony that he was able to read the *Miranda* form aloud, refused to sign a statement when agents confirmed that to sign would be to admit guilt, independently asked whether his attorney should be present for an interview, and was able to explain coherently the charges against him. In Hoskie's case, we have no demonstration of the requisite comprehension. The testimony of both experts and the statements of defense counsel cast doubt on his competency. There was no testimony that Hoskie was ever able to explain his *Miranda* rights, to explain the charges against him, or to explain in any more than the most rudimentary terms the roles of the participants in the criminal trial process.

This case is likewise distinguishable from the cases in which we have affirmed a district court's finding of competency because it was entitled to accord greater credibility to the government expert than to the defense expert. In those cases, the experts' testimony squarely conflicted. In *Frank*, for example, the government's experts flatly disagreed with the defense experts' conclusion that the defendant was retarded and severely depressed. They testified that there was no evidence that Frank was mentally retarded or suffered from severe depression at the time of their examination. 933 F.2d at 1493. One psychiatrist testified that Frank's intelligence was "low average." *Id.* at 1494. In *Guam v. Taitano*, 849 F.2d 431, 432 (9th Cir.1988) (holding that district court was entitled to rely more heavily on the opinions of three government experts than on that of defendant's expert), two of the expert witnesses concluded that the defendant was not mentally ill and stated their belief that he was malingering, and a third simply concluded that he was competent to stand trial. *See also, United States v. Lindley*, 774 F.2d 993 (9th Cir.1985) (finding that the district court did not clearly err in assigning more weight to the findings of government psychiatrists than to the contrary conclusion of a psychiatrist retained by the defense).

In the present case, by contrast, the two experts agree about Hoskie's diagnosis and relate similar information regarding Hoskie's ability to comprehend the trial process immediately following simple explanations. They simply disagree as to the ultimate question of Hoskie's competency. Under those circumstances, because there is nothing in Dr. Grossman's report or testimony to refute the defense evidence that even Hoskie's rudimentary understanding vanished within minutes after the explanations, and because of Dr. Grossman's heavy reliance on Hoskie's ability to perform relatively mechanical functions as evidence of competency, we conclude that it was clear error to give greater weight to his report and testimony than to that of Dr. Tatro.

In addition, the district court erred to the extent that it based its competency determination on its concern with Hoskie's future dangerousness. The statutory framework clearly separates the competency determination, provided by 18 U.S.C. § 4241(a)–(c), from the temporary commitment procedure provided by 18 U.S.C. § 4241(d), and the procedures for indefinite commitment of dangerous incompetent persons provided by 18 U.S.C. § 4246. No doubt we all share the district court's concern that Hoskie not be allowed to repeat his brutal crime. Nevertheless, the difficulties he may pose because of his incapacity to control himself or his likely future dangerousness have no place in our consideration of whether he is competent to stand trial.

We REVERSE Hoskie's conviction and the district court's finding that Hoskie was competent to stand trial. While we conclude that the court committed clear error in finding Hoskie competent on the record

before it at that time, we take no position on whether further examination of Hoskie by experts or the court as to his current condition might yield sufficient evidence of his competence under the relevant standards. Accordingly, we leave it to the district court's discretion whether to conduct a further competency hearing and to order Hoskie to submit to further evaluation pursuant 18 U.S.C. §§ 4241(a), (c), and 4247, or whether to commit Hoskie directly to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d). The case is REMANDED for further proceedings consistent with this opinion.