# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1769

_____

United States of America,

        Appellee,

v.

Hessam Ghane,

        Appellant.

\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.

_____

Submitted: September 17, 2004
Filed:    December 20, 2004

_____

Before COLLOTON, HEANEY, and HANSEN, Circuit Judges.

_____

HEANEY, Circuit Judge.

Hessam Ghane is a 54-year-old naturalized United States citizen of Iranian descent who suffers from delusional disorder. On February 4, 2003, Ghane was admitted to an Overland Park Hospital emergency room, stating that he was suicidal because he was depressed and out of work. He told a physician's assistant that he intended to kill himself using a solid form of cyanide, which he had acquired through his years as a chemist, and stored in his home. The physician's assistant notified the Independence, Missouri Police Department, and detectives were sent to interview Ghane, who consented to a search of his home. During the search, a bottle half-filled with white powder was found under Ghane's kitchen sink. The powder was later

determined to be bicarbonate and seventy-five percent potassium cyanide. Ghane stated he did not know it was illegal to possess potassium cyanide, and claimed he intended to use it in teaching, to conduct experiments, or to commit suicide. He was charged with criminal possession of potassium cyanide, in violation of 18 U.S.C. §§ 229(a)(1) and 229A(a)(1).

On October 30, 2003, the court held a competency hearing and determined that Ghane was incompetent to stand trial. The magistrate conducted a <u>Sell</u>[1] hearing on January 12, 2004 and ordered Ghane to be involuntarily medicated with antipsychotic medications in order to restore him to competency to stand trial. The magistrate found that the recommended treatment is substantially likely to render Ghane capable of standing trial because medical testimony indicated there was a ten percent chance of success. Ghane appeals this order.

Appellate review of a district court's findings of fact is for clear error. <u>United States v. Cook</u>, 356 F.3d 913, 918 (8th Cir. 2004). An individual has a constitutionally protected liberty interest in rejecting or avoiding the administration of antipsychotic medications. <u>Washington v. Harper</u>, 494 U.S. 210, 221-22 (1990). Before the court may authorize the involuntary administration of antipsychotic medication for the purpose of rendering Ghane competent to stand trial, the government must show: (1) important government interests are at stake; (2) involuntary medication is substantially likely to render the defendant competent to stand trial, and substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel at trial; (3) involuntary medication is necessary to further the government's interests, and less intrusive means are unlikely to achieve substantially the same results; and (4) the administration of the drugs is medically appropriate. <u>See</u> <u>Sell</u>, 539 U.S. at 180-182. Neither the Supreme Court nor our circuit has spoken on the standard of proof that

---

[1]<u>Sell v. United States</u>, 539 U.S. 166 (2003).

attaches to <u>Sell</u> proceedings. In <u>United States v. Gomes</u>, 387 F.3d 157, 160 (2nd Cir. 2004), the Second Circuit determined that a clear and convincing standard should apply. Ghane asks us to use the preponderance of the evidence standard, and the district court applied a lesser standard. We need not determine which to use in this case, however, because each of the standards would yield the same result: the government has failed to sustain its burden.

The second and fourth <u>Sell</u> factors are at issue here: is the involuntary administration of antipsychotic medication substantially likely to render Ghane competent to stand trial; and is the administration of an increased dosage of antipsychotic medication medically appropriate? The magistrate made the following findings about Ghane's psychotic disorder after considering testimony from at least four psychiatrists:

> Delusional disorder is characterized by the presence of one or more fixed, nonbizarre, and unvarying delusions. Patients with delusional disorder do not experience hallucinations or disorders of thinking or perception. Rather, they maintain delusions, or false beliefs, despite any amount of evidence to contradict those beliefs. The delusions are "nonbizarre," meaning they involve events or situations that could conceivably occur in real life, rather than supernatural agents or phenomena. In the Persecutory Type of delusional disorder, individuals typically believe they are being conspired against, spied on, poisoned or drugged, or otherwise persecuted.
>
> <u>Delusional disorder resists treatment by both psychotherapy and antipsychotic medication</u>. Patients with delusional disorder are fully intact individuals, and the delusions themselves are not indicative of a thought disorder. The delusions are a fixed part of the individual's thought pattern, and, except in the mildest cases, they cannot be convinced through behavioral therapy to ignore the delusional beliefs or to recognize their falsity. <u>Antipyschotic medication is similarly ineffective at treating delusional disorder</u>.

-3-

> Approximately 10 percent of patients who receive antipsychotic drugs experience a lessening of symptoms or remission. Of that 10 percent, about half, or 5 percent, are symptom-free after treatment. The remainder are considered "improved," meaning the patients are less preoccupied with their delusions, either because the delusions appear in the past tense or because they are able to adopt a behavioral stance of acting as though the delusions are false. <u>Ninety percent of delusional disorder patients do not experience improvement with treatment</u>.

<u>United States v. Ghane</u>, No. 03-00171-01-CR-W-ODS, slip op. at 5 (D. Mo. Feb. 12, 2004) (Report and Recommendation on Government's <u>Sell</u> Mot.) (Citations omitted) (Emphasis added). On the basis of these facts, the court below determined that involuntarily medicating Ghane was substantially likely to restore his competency. We cannot accept that a "glimmer of hope" for his restored competence rises to the level of "substantial likelihood," as mandated by the Supreme Court's holding in <u>Sell</u>. A five to ten percent chance of restored competence cannot be considered substantially likely under any circumstances.[2] It was error for the court below to hold that the government had met its burden in establishing the second <u>Sell</u> factor. We therefore reverse the district court.

_____

---

[2]<u>Compare</u> <u>Gomes</u>, 387 F.3d at 161-62 (finding that a seventy percent success rate in restoring defendant's competence through drug treatment was substantially likely to render Gomes competent and substantially unlikely to have disabling side effects).