# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3700

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Hessam Ghane, also known as Sam | * | |
| Ghane, | * | [PUBLISHED] |
| | * | |
| Appellant. | * | |


_____

Submitted: April 14, 2009
Filed:   January 29, 2010

_____

Before MURPHY,  HANSEN, and BYE, Circuit Judges.

_____

HANSEN, Circuit Judge.

This is the third time we have reviewed Dr. Hessam Ghane's competency to stand trial.  Following the most recent competency hearing held in September 2008, the district court determined that Dr. Ghane was not then able to consult with and assist his attorneys in his defense, nor would he achieve competency within the foreseeable future.  With all due respect to the district court, we believe it clearly erred by basing its conclusion on improper considerations, and we reverse the district court's finding that Dr. Ghane was incompetent to stand trial in September 2008.

I.

Dr. Ghane, who holds a Ph.D. in chemistry, was arrested in February 2003 and charged with criminal possession of potassium cyanide, 18 U.S.C. §§ 229(a)(1) and 229A(a)(1), after he was admitted to an emergency room stating he intended to kill himself. He has never stood trial for those charges although more than six years has passed. The court ordered a competency evaluation, and Dr. Robert G. Lucking, a psychiatrist employed by the Federal Medical Center at Butner, North Carolina, diagnosed Dr. Ghane with delusional disorder–paranoid type in August 2003. Dr. Ghane believed that the prosecution and his own attorneys were all part of a wide ranging conspiracy against him dating back to his termination from the Army Corps of Engineers in the early 1990s, when he claims he refused to work as a CIA spy. Dr. Lucking opined that Ghane's delusions rendered him unable to rationally understand the charges against him, making him incompetent to stand trial. Dr. Ghane's competency was first questioned when Ghane was not taking antipsychotic medications, and he was evaluated for the possibility of being involuntarily medicated. The district court ordered Dr. Ghane to be involuntarily medicated, but we reversed that order, concluding that the Government had failed to meet its burden under Sell v. United States, 539 U.S. 166 (2003), to support involuntary medication. See United States v. Ghane, 392 F.3d 317, 320 (8th Cir. 2004) (Ghane I).

Dr. Ghane then agreed voluntarily to take antipsychotic medications, and he was subsequently reevaluated by Dr. Lucking, who recommended that the court find Dr. Ghane competent to stand trial in a July 5, 2005, report. The district court accepted Dr. Lucking's recommendation, and a trial date was set for January 9, 2006. Five days before trial, Dr. Ghane's attorney contacted the court with concerns that Ghane's delusions had returned. In preparing another report on Dr. Ghane's competency in early 2006, Dr. Lucking learned that a staff psychiatrist at a Corrections Corporation of America (CCA) detention facility near Kansas City where Ghane was housed had discontinued Ghane's prescription for Seroquel, an

-2-

antipsychotic medication, in June 2005 due to negative side effects. Dr. Ghane resumed taking Seroquel at the previously prescribed dosage of 600 mg in early 2006, and Dr. Lucking opined that Ghane had returned to a baseline level of functioning at which he was competent to stand trial by April 2006. The court held a competency hearing on May 2, 2006, found Dr. Ghane competent, and set a new trial date for July 31, 2006.

Just prior to the July 2006 trial date, the Government raised concerns about Dr. Ghane's competency once again based on a letter dated March 28, 2006, that Ghane had sent to the Office of the Chief Disciplinary Counsel of the Missouri Bar in which Ghane stated, "I have no dought [sic] that my attorneys have sold me to the Prosecutor." United States v. Ghane, 490 F.3d 1036, 1038 (8th Cir. 2007) (Ghane II). Ghane also sent five pro se letters to the district court in July 2006 addressing various administrative matters concerning his pending criminal trial. He included his proposed witness list, in which he listed several individuals as witnesses to testify about his termination from the Army Corps of Engineers. He also listed the federal district judge who dismissed Dr. Ghane's wrongful termination suit as a witness.

The district court requested that Dr. John H. Wisner, who had evaluated Dr. Ghane by order of the court in 2003, evaluate Dr. Ghane again, and the court conducted another competency hearing in August 2006. Although Dr. Ghane refused to meet with Dr. Wisner, Dr. Wisner submitted a July 2006 report opining that Dr. Ghane was paranoid and suspicious of his own counsel, the judge, and the entire judicial process, rendering him incompetent to effectively assist in his own defense. Dr. Lucking, who had not seen Dr. Ghane since March 2006 when he had found Dr. Ghane competent, testified at the August 2006 competency hearing that Ghane's letter to the Disciplinary Counsel and his numerous pro se filings indicated that Ghane's active delusions had returned and rendered him incompetent to stand trial. Notably, the CCA staff had reduced Dr. Ghane's dosage of Seroquel from 600 mg to 500 mg in April 2006 when he was transferred from Butner and returned to the CCA facility

in Kansas City. Dr. Lucking testified at the August 2006 hearing that he did not consider the change in dosage to be a significant reduction. The district court concluded that Ghane's delusions that his attorneys were working against him rendered him incompetent to stand trial, and we affirmed that finding. Id. at 1041 (but noting that "there remains the possibility that with medication and cooperation with his attorneys he may become sufficiently competent to stand trial at some future point").

Following the August 2006 finding of incompetency, which we affirmed in June 2007 in Ghane II, the district court on December 21, 2007, ordered Dr. Ghane committed to the custody of the Attorney General for hospitalization and treatment to determine whether there was a substantial possibility that Dr. Ghane would attain sufficient capacity in the foreseeable future to proceed with the case. See 18 U.S.C. § 4241(d)(1). Dr. Lucking again evaluated Dr. Ghane and opined in a May 23, 2008, report that continued treatment would not likely restore Ghane to competency. The defense team hired an independent expert, Dr. William S. Logan, to evaluate Dr. Ghane. Dr. Logan, who had reviewed Ghane's case in 2003 to help ascertain the side effects of the antipsychotic medications proposed at that time, interviewed Ghane on August 20, 2008. Dr. Ghane's counsel was present for the interview to enable Dr. Logan to evaluate Ghane's interaction with his counsel. Based on the interview and Dr. Logan's review of the other psychological evaluations and reports concerning Dr. Ghane, Dr. Logan concluded in a report dated September 8, 2008, that Ghane was then currently able to assist his counsel in his defense and was competent to stand trial.

The magistrate judge held a competency hearing on September 11, 2008. Dr. Logan's September 2008 report and Dr. Lucking's May 2008 report were introduced into evidence, and both doctors testified at the hearing. Dr. Lucking testified consistent with his May 2008 report that Dr. Ghane was an intelligent individual who had learned through prior competency hearings what to say to avoid revealing his continuing delusions. Dr. Lucking also testified that Ghane has likely continually

-4-

acted on his delusions of persecution since the first competency hearing in 2003, but he was able to fool evaluators, including Dr. Lucking, into believing that he was competent by hiding his delusional beliefs. Dr. Lucking believed that Ghane has never been competent to stand trial, contrary to his own earlier evaluations of Ghane. Dr. Lucking relied on Dr. Ghane's actions of filing pro se motions in 2006 to conclude in his May 23, 2008, report that Ghane continued to distrust his attorneys and was therefore unable to assist in his defense. Dr. Lucking testified at the September 2008 hearing that a pro se filing made by Dr. Ghane on August 14, 2008, in which Ghane alerted the district court to a recent Supreme Court case that he thought helped establish his own competence to stand trial, supported the incompetency conclusion he reached in his May 2008 report because the filing was consistent with the "blizzard" of filings made in 2006, and it reflected Dr. Ghane's continued distrust of his attorneys.

Dr. Logan stated in his September 8, 2008, report that "Dr. Ghane may still believe he was persecuted by the government," but that "currently . . . his focus on these delusional ideas appear [sic] to have lessened to the point Dr. Ghane can focus on practically facing the legal situation and can assist properly in his defense." (Appellant's App. at 139.) Dr. Logan also noted, as evidence of Dr. Ghane's ability to assist his counsel, that Ghane's counsel intended to interview at least one witness identified by Ghane. Dr. Logan testified at the September 11, 2008, hearing that while compliant with his current medications, Dr. Ghane is able to distinguish between prior unfavorable events in his life and his current situation in federal court such that he was not drawing a causal connection between them. He also testified that Dr. Ghane was currently cooperative with his attorneys and was open to discussing legal strategy with them. During the August 20 interview, Dr. Ghane discussed with Dr. Logan the level of intent required to establish the underlying charges against him, and Ghane stated that if simple intent was all that was required, he would consider entering a guilty plea. Dr. Logan testified that the use of Seroquel reduced Dr. Ghane's suspiciousness. As for the August 2008 pro se filing, Dr. Logan testified that there was a substantive

difference between that filing, alerting the court to a recent Supreme Court opinion that Ghane thought relevant to his competency, and the prior pro se filings from 2006 when Ghane filed numerous items attempting to bring unrelated events from his past into the current proceedings and accused his attorneys of selling him out to the prosecution. Given the substantive difference, and the fact that there was only one recent filing, Dr. Logan did not see the August 2008 pro se filing as evidence that Dr. Ghane was acting on delusions that his attorneys were acting against his interests. Dr. Logan's final conclusion was that Dr. Ghane's delusional disorder was sufficiently controlled by medication and that he was currently competent to stand trial, but that if his mental condition deteriorated as trial approached, further treatment would not likely restore his competency.

Following the hearing, the magistrate judge made a written report and recommendation that the district court conclude that Dr. Ghane remained incompetent to stand trial and would not regain competency in the foreseeable future. The district court adopted the report and recommendation, and Dr. Ghane once again appeals.

## II.

We review the district court's determination that Dr. Ghane was incompetent to stand trial for an abuse of discretion. United States v. Whittington, 586 F.3d 613, 617 (8th Cir. 2009). "The competency determination is a factual finding we affirm unless clearly arbitrary or unwarranted, or clearly erroneous." Id. (internal marks omitted). A defendant is incompetent to stand trial if it is shown "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d); see also Whittington, 586 F.3d at 618. In assessing a defendant's competency, the district court may consider various factors, including expert medical opinions and its own observations of the defendant during

the proceedings. United States v. Denton, 434 F.3d 1104, 1112 (8th Cir. 2006). Importantly, "not every manifestation of mental illness demonstrates incompetence." Vogt v. United States, 88 F.3d 587, 591 (8th Cir. 1996) (internal marks omitted). That a defendant suffers from a mental deficiency or demonstrates "bizarre, volatile, and irrational behavior" does not necessarily make him incompetent to stand trial. Id. (internal marks omitted). A defendant's competency is not static and may change over even a short period of time. See Lyons v. Luebbers, 403 F.3d 585, 593 (8th Cir. 2005) (noting that a district court must remain alert to changing circumstances that may indicate that a defendant who was competent at the commencement of trial has become incompetent). Thus, it is incumbent on the district court to base its competency determination on the defendant's current state of mind to the extent it is ascertainable from the information available. See United States v. Jimenez-Villasenor, 270 F.3d 554, 559 (8th Cir. 2001) (defining the test as "whether the defendant had 'a sufficient present ability to consult his lawyer'" (quoting Vogt, 88 F.3d at 591)).

There are two elements to a competency finding: (1) whether "the defendant has a rational as well as factual understanding of the proceedings against him," and (2) whether the defendant "is able to consult with his lawyer with a reasonable degree of rational understanding." Denton, 434 F.3d at 1112 (internal marks omitted). Dr. Ghane was first found incompetent to stand trial in 2003 based on his delusional belief that he was being persecuted and that the current charges were part of a wide ranging government conspiracy against him. At that time, Dr. Lucking believed that Dr. Ghane failed the first prong of the competency evaluation, concluding that "these delusions rendered Ghane unable rationally to understand the charges against him." Ghane II, 490 F.3d at 1037. Dr. Ghane also failed the second prong, as he was unable to assist in his defense because he believed his attorneys were acting against his interests and because he insisted on defending himself against the current criminal charges of possession of potassium cyanide with evidence about the purported conspiracy surrounding his termination from the Army Corps of Engineers. In 2005,

Dr. Lucking opined that Dr. Ghane's voluntary medication "enabled him to put aside his belief of government persecution and to discuss his defense against the criminal charges realistically." Id. at 1038. In August 2006, Dr. Lucking determined that Ghane's active delusions of persecution had returned, that Ghane believed that his attorneys were part of the persecution, and that the active delusions interfered with Ghane's ability to work with and assist his lawyers. At that time, the district court determined that Dr. Ghane again failed both prongs. Although Ghane had a factual understanding of the charges against him, he lacked a rational understanding because his understanding was premised on his delusion of a government conspiracy that included his lawyers, the doctors, and the court, id. at 1039-40, and Ghane was unable to assist in his defense because he believed his lawyers were part of the conspiracy against him.

Notably, the court and the doctors currently (at least as of September 2008) agree that Ghane has both a factual and a rational understanding of the charges against him, satisfying the first prong of the competency test. This is a change from prior findings that he lacked a rational understanding of the charges. It is only Ghane's ability to assist in his defense, the second prong, that, according to the district court, now makes him incompetent to stand trial.

The Supreme Court has defined a defendant's ability to assist properly in his defense as possessing a "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" Cooper v. Oklahoma, 517 U.S. 348, 354 (1996) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)). In determining that Dr. Ghane was unable to assist in his defense, the magistrate judge credited Dr. Lucking's opinion over Dr. Logan's contrary opinion. The magistrate judge gave greater weight to Dr. Lucking's opinion in part because Dr. Lucking had a much longer history with Dr. Ghane dating back to his first evaluation in 2003, noting that Dr. Lucking had spent nearly twenty hours over four different occasions evaluating Dr. Ghane while Dr. Logan had examined Dr. Ghane only once for an hour

and 45 minutes.  The magistrate judge credited Dr. Lucking's conclusion that Dr. Ghane had been hiding his delusions from his evaluators, including Dr. Lucking.  He found support for Dr. Lucking's conclusion in the independent actions taken by Ghane at times that he was represented by counsel, citing to the 2006 pro se filings, the August 2008 pro se letter, and the fact that Ghane personally contacted Dr. Logan for an independent evaluation in November 2007 when his counsel purportedly did not act quickly enough in doing so.  The magistrate judge also based his conclusion that Dr. Ghane was not able to assist in his defense on his own observations during the competency hearing that Ghane was "not able to allow his attorney to act on his behalf without interference."  (Add. at 16.)

It is certainly within a district court's province to choose one expert's opinion over a competing qualified expert's opinion.  See Ghane II, 490 F.3d at 1040.  Nonetheless, in crediting an expert's opinion, it is not the opinion itself that is important, but the rationale underlying it.  See Whittington, 586 F.3d at 618 ("Even expert opinion on competency rises no higher than the reasons on which it is based; it is not binding upon the trier of the facts." (internal marks omitted)); cf. United States v. Hoskie, 950 F.2d 1388, 1394 (9th Cir. 1991) (distinguishing cases affirming a district court's competency determination based on one of two competing experts' opinions where the opinions were directly in conflict, noting that the experts in the case at hand agreed on diagnosis but disagreed on the ultimate conclusion of competency).  Thus, we look closely at the rationale underlying the magistrate judge's conclusion that Dr. Ghane was mentally incompetent to stand trial, which the district court adopted.

The magistrate judge relied on a number of factors which, viewed together, we believe fail to support its conclusion: Dr. Ghane's 2006 pro se filings, his August 2008 pro se filing, two interruptions during the September 2008 hearing, and his "goal" of being found competent to stand trial.

While a represented defendant's pro se filings with the court and a defendant's interruptions of his attorney during a hearing may be some evidence that the defendant is dissatisfied with his defense, those actions say little, standing alone, about the defendant's mental competency to stand trial. If that were the test, our federal medical facilities would be full of defendants who were incompetent to stand trial. The critical factor for competency purposes is whether the defendant is suffering from a mental disease or defect that renders him mentally incapable of assisting properly in his defense. Pro se filings and interruptions generally reflect a defendant who disagrees with his attorney's handling of his case, but disagreement with one's attorney does not make one mentally unable to consult with him. Cf. United States v. Minnis, 489 F.3d 325, 329 (8th Cir. 2007) (noting that district court's determination that defendant was able to assist in his defense was supported by the defendant's pro se motion for a psychiatric evaluation), cert. denied, 128 S. Ct. 1097 (2008). In determining whether a pro se filing or an interruption is evidence that a defendant is mentally incapable of assisting in his defense, the substance of the pro se filing or of the interruption becomes critical. Certainly a defendant who files fanciful or implausible pro se papers or interrupts his attorney during a hearing to tell the district court about some delusion unrelated to his case has exhibited signs of an inability to properly assist in his defense. The magistrate judge erred in equating Dr. Ghane's current interruptions and single pro se filing with evidence of incompetence without focusing on the substance of Ghane's interruptions and filing.

The 2006 pro se filings did support the conclusion that Dr. Ghane was at that time acting on his delusional beliefs that the criminal charges were part of a government conspiracy because in those filings Ghane attempted to bring irrelevant information related to his termination from the Army Corps of Engineers in the early 1990s into the current proceedings involving allegations of the illegal possession of potassium cyanide in 2003. The substance of the 2006 filings reflected Dr. Ghane's delusions about a government conspiracy. But competency is not static and must be evaluated based on the defendant's current mental status. Ghane II, 490 F.3d at 1041

(rejecting Dr. Ghane's reliance on prior evaluations finding him competent to establish his current competence). The magistrate judge erred in relying too much on Dr. Ghane's actions two years prior to the current competency determination, particularly in light of Dr. Ghane's actions since that time.

The magistrate judge relied on the single August 2008 pro se filing as evidence that Dr. Ghane continued to believe that his attorneys were part of a conspiracy against him, equating the single 2008 filing with the numerous 2006 filings. However, the August 2008 filing was substantively different than Dr. Ghane's previous court filings. It alerted the district court to a recent Supreme Court opinion involving a delusional defendant who was nonetheless found competent to stand trial, which was at least factually relevant to Dr. Ghane's upcoming competency hearing. There is nothing about this filing that reflects that Ghane was acting on his delusional belief of government persecution or a belief that his attorneys were part of such a conspiracy. That Ghane's attorney did not agree with his assessment of the importance of the case based on the specific issues involved in it does not mean that Ghane was delusional in believing it was relevant. We certainly do not expect criminal defendants, even ones with Ph.D.s, to understand the legal nuances of Supreme Court cases. The purpose for which Ghane sought to use the case was relevant to the current charges to the extent that Dr. Ghane had to be found competent before he could face the charges, thus refuting the conclusion that the 2008 filing reflected Ghane's delusional beliefs. Cf. United States v. Lambros, 65 F.3d 698, 701-02 (8th Cir. 1995) (concluding that defendant's pro se filings that included lucid explanations supported the district court's conclusion that the defendant was competent to stand trial, where defendant argued in his pro se filings that his delusions that the government controlled his thoughts through an electronic implant made him incompetent to stand trial and assist in his defense), cert. denied, 516 U.S. 1082 (1996). That Dr. Ghane filed the August 2008 letter without his attorney's knowledge may well reflect his belligerence, but it does not evince a mental inability to consult with his attorney.

-11-

The magistrate judge also relied on his own observations of Dr. Ghane's interruptions of his attorney during the September 11, 2008, competency hearing to support his conclusion that Ghane continued to be unable to assist in his defense or consult with his attorneys, citing to two pages in the hearing transcript. We certainly must give due deference to the magistrate judge's firsthand observations in the courtroom. Our review of the admittedly cold transcript of the September 11, 2008, hearing reveals an interruption by Dr. Ghane at the end of Dr. Logan's testimony. Ghane apparently thought it important to inform the court that he had talked to his attorney, Mr. Wyrsch, about contacting Dr. Logan to perform an independent evaluation and that Dr. Ghane had contacted Dr. Logan personally when Mr. Wyrsch failed to do so. The court accepted Mr. Wyrsch's proffer of the information. Mr. Wyrsch told Dr. Ghane to "just calm down" twice during the exchange, and the court went back to its own questioning of Dr. Logan.

The magistrate judge's second cite to the hearing transcript involving an interruption by Dr. Ghane reflects the portion of the hearing when Mr. Wyrsch was finishing his direct examination of Mr. Randy Green, a vocational rehabilitation specialist at FMC Butner who worked with Ghane. Mr. Green had testified that Ghane's attendance at the vocational workshop was somewhat sporadic. It appears from the record that Ghane said something to his counsel that made the magistrate judge think that Mr. Wyrsch was not finished with his examination. Mr. Wyrsch said he was through, and the court proceeded to call the next witness, who was on location with Mr. Green in Butner and appearing telephonically. The court then asked the next witness to retrieve Mr. Green, and Mr. Wyrsch stated that Dr. Ghane reminded him that he was attending courses at the time during which Mr. Green referred to his sporadic attendance. The court asked Mr. Green if could agree to those facts, to which Mr. Green responded, "Yes." There are no outbursts apparent from the transcript, and Mr. Wyrsch did not make any audible comments to Dr. Ghane during this exchange.

-12-

Like our review of the pro se filing, we believe that the context of Dr. Ghane's interruptions is important in assessing their probativeness into Ghane's ability to assist in his defense. It is not *any* inability to assist in a defendant's case or *any* disagreement with counsel that makes a defendant incompetent; it is only an inability caused by a mental disease or defect that renders him mentally unable to assist in his defense that matters. Our review of the transcript reveals that Dr. Ghane's interruptions were not related to his delusions but were related to the testimony being offered at the time and Dr. Ghane's attempts to get his attorney to say what Dr. Ghane thought needed to be said. As any defense counsel can attest to, criminal defendants are often unhappy with how proceedings are handled and think they know best how to handle their case. Interruptions by defendants during a hearing are not uncommon. But that does not make a defendant who interrupts his counsel mentally incompetent to stand trial. Dr. Ghane's insistence that Dr. Logan evaluate him turned out to be fruitful, as Dr. Logan opined that Dr. Ghane was competent to stand trial following his evaluation. The second interruption attempted to deal with Mr. Green's testimony about Ghane's sporadic attendance at the vocational workshop. If anything, Ghane's interruption reveals that he was following the testimony and was able to make relevant suggestions to his attorney to dispel any negative connotations. The context of the interruptions does not reveal that Dr. Ghane was acting under a delusion of persecution or under a belief that his attorney was involved in a conspiracy against him, only that he wanted his attorney to make his point to the court on subjects relevant to the proceedings.

We are also concerned about the magistrate judge's reliance on Dr. Ghane's goal of being found competent, a factor also identified by Dr. Lucking, as evidence that he was in fact incompetent to stand trial. True, the majority of cases dealing with competency to stand trial involve defendants asserting their incompetence against a prosecution claim of competence to proceed to trial, generally raised by the defendant after an unfavorable outcome. That does not make a desire to be found competent evidence of incompetence. It is completely rational for a competent defendant to seek

-13-

to be found competent so that the pending accusations can be resolved, especially one who has been incarcerated and hospitalized for as long as Dr. Ghane has. The magistrate judge erred in relying on Dr. Ghane's desire to be found competent as evidence of his incompetence to stand trial.

Finally, we must give some credence to Dr. Ghane's attorney's opinion that he is competent to assist in his defense. See Denton, 434 F.3d at 1113 ("Trial counsel's opinion should receive significant weight since '[c]ounsel, perhaps more than any other party or the court, is in a position to evaluate a defendant's ability to understand the proceedings.'" (quoting Balfour v. Haws, 892 F.2d 556, 561 (7th Cir.1989))). Although Dr. Ghane's attorney did not testify at the competency hearing or offer an affidavit concerning Dr. Ghane's interaction with him in preparing a defense, his attorney expressed his opinion in briefing and at oral argument that Dr. Ghane is able to assist in his defense. This is not a case of an attorney blindly following his client's wishes to advocate for competency; we note that this is the same counsel who questioned Dr. Ghane's competency prior to the scheduled January 2006 trial. We believe that it was incumbent on the district court to have considered Dr. Ghane's attorney's opinion about Ghane's competence, particularly in light of the district court's conclusion that it was only Dr. Ghane's inability to assist in his defense–a subject about which his attorney would have valuable insight–that made him incompetent.

We necessarily conclude that the magistrate judge relied on improper bases to support the conclusion that Dr. Ghane was incompetent to stand trial, including the existence of a pro se filing and two interruptions without carefully considering the substance of the filing and the interruptions as well as Dr. Ghane's goal of being found competent. These bases do not support the conclusion that Dr. Ghane was incompetent to stand trial, particularly in light of Ghane's attorney's belief that Ghane was capable of assisting in his defense, the relevant assistance that Dr. Ghane has provided, and Dr. Logan's opinion supported by his contemporaneous evaluation of

Ghane and Ghane's interaction with his counsel. The district court therefore clearly erred in its adoption of the magistrate judge's recommendation that Dr. Ghane was incompetent to stand trial in September 2008. Cf. Hoskie, 950 F.2d at 1394 (where two experts agreed on diagnosis and defendant's ability to comprehend proceedings but disagreed as to ultimate question of defendant's competency, district court clearly erred in giving greater weight to expert whose opinion did not consider unrefuted defense evidence that defendant was unable to retain understanding of proceedings shortly after it was explained to him).

We recognize that even Dr. Logan testified that Dr. Ghane's competence may become compromised with the stress of trial or unanticipated delays in the proceedings. This certainly has happened in the past; Ghane reached the eve of a scheduled trial twice, only to have the trial postponed based on the district court's conclusion that he was incompetent, once at the Government's urging and once based on his own attorney's concerns. But we note that at both of those times, Dr. Ghane's dosage of Seroquel had changed; he was taken off of Seroquel altogether prior to the first trial, and then his dosage was reduced from 600 mg to 500 mg prior to the second trial. Although Dr. Lucking found the decrease insignificant, the doctors agreed that Ghane's suspicions increased the closer he got to trial, and the Seroquel helped allay his suspiciousness. The change in dosage may be one explanation for the return of Ghane's delusions close to trial. While the consequences of putting a mentally incompetent defendant on trial are grave, so too are the consequences of Dr. Ghane being found incompetent if he is, in fact, actually competent to stand trial. The district court has ordered Dr. Ghane to be evaluated under 18 U.S.C. § 4246 to determine whether he is a danger to others, in which case he would be civilly committed to a mental facility for an indefinite amount of time.

## III.

Having carefully reviewed the record, we believe that the district court relied on clearly erroneous factors in determining that Dr. Ghane was incompetent to stand trial as of September 2008. We reverse the district court's finding of incompetency, and we remand for further proceedings. Any re-evaluation of Dr. Ghane's competency should focus on whether his then current mental status and the effects of any prior delusional diagnosis prevent him from assisting in his defense, rather than his general disagreement with counsel's handling of his case.

_____