# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3698

_____

United States of America,             *
*
        Appellee,            *
                                 *  Appeal from the United States
     v.                  *  District Court for the Eastern
                                 *  District of Missouri.
Edward Whittington,           *
*
        Appellant.          *

_____

Submitted: September 25, 2009
Filed: November 12, 2009

_____

Before MURPHY, BRIGHT, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Edward Whittington (Whittington) was charged with multiple counts of preparing false tax returns. Whittington's counsel requested a hearing to determine whether Whittington was competent to stand trial. The district court[1] found Whittington was competent, and thereafter a jury found Whittington guilty. Whittington appeals the competency determination. We affirm.

---

[1] The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

## I.    BACKGROUND

In 2002, Whittington was convicted of filing a false tax return. On October 18, 2007, a grand jury indicted Whittington on ten counts of willfully aiding, assisting, and advising the preparation of false and fraudulent tax returns related to the 2004 calendar year, in violation of 26 U.S.C. § 7206(2). The government voluntarily dismissed one count, and a trial was scheduled for May 5, 2008.

On April 30, 2008, three business days before trial, Whittington's counsel filed a motion requesting a competency hearing pursuant to 18 U.S.C. § 4241(a). The district court granted the motion on May 2, 2008, and held a competency hearing immediately before the trial began on May 5, 2008. Defense counsel presented one witness, Dr. C. Robert Cloninger (Dr. Cloninger), an accomplished psychiatrist who examined Whittington on April 26, 2008. The government did not present a rebuttal witness, citing insufficient time to secure an expert, and stating its belief that, "based on the report and the evidence, there will be little doubt that the defendant is competent to stand trial."

Before Dr. Cloninger conducted Whittington's psychological examination, Dr. Cloninger reviewed a presentence investigation report (PSR) pertaining to Whittington's 2002 offense and an IRS report discussing Whittington's conduct in relation to the pending charges. Dr. Cloninger began the examination by interviewing Whittington for two hours and forty-five minutes. Next, Dr. Cloninger administered a Temperament and Character Inventory (TCI), which consisted of 240 questions and took Whittington thirty-five minutes to complete. Finally, Dr. Cloninger interviewed Whittington a second time.

During the first interview, Dr. Cloninger asked Whittington open-ended questions about Whittington's family background, education, work history, and offense conduct. Whittington frequently reported information different from the information documented in the reports Dr. Cloninger had reviewed. In the second

-2-

interview, Dr. Cloninger confronted Whittington with the discrepancies and asked Whittington to provide an explanation. For example, Whittington claimed he had a master's degree in business administration from Webster University. When Dr. Cloninger confronted Whittington about this claim, Whittington responded he felt he deserved the master's degree because of the course credit work he performed, and he had just never gotten around to paying the $300 or $400 fee to get his degree. Dr. Cloninger provided several other examples of similar statements, such as Whittington describing himself as the Chief Financial Officer of Lester Petty & Associates, despite the fact Whittington received no income to support this claim.

After the examination, Dr. Cloninger diagnosed Whittington with depression and a Cluster B dramatic, erratic, or impulsive personality disorder. Dr. Cloninger based his diagnosis upon an opinion Whittington "has a tremendous sense of shame and embarrassment about the discrepancy between his own image of himself and what he is charged with." Dr. Cloninger also testified Whittington has a self-image which is distorted and untrue, and Whittington has to lie to himself and to everyone else in an effort to protect his self-image. Dr. Cloninger described Whittington as taking certain information he does not want to consider and putting it out of his consciousness.

Dr. Cloninger testified Whittington usually believes his own lies, and when "he realizes that there are discrepancies . . . , he tries to reduce the discrepancy by a variety of explanations." Dr. Cloninger explained, "I think he is consciously striving to pull information into his memory; into his consciousness in order to reconcile what facts he can make available to himself and to us to justify and defend something he did before that wasn't fully a conscious action." Dr. Cloninger continued, "It is like he has a [censor] between his conscious mind and his unconscious mind and [censors] don't let things come into awareness that are very painful for him." Dr. Cloninger described this as an unintentional and unconscious process or defense mechanism called "repression." Dr. Cloninger further testified Whittington understands the nature

and the course of the proceedings against him, but Whittington is not able to assist his attorney in his defense because he "is lying to himself and trying to protect his self-image, which means that he is not able to share with us adequate information to truly understand what went on and to defend himself as he actually is. He's defending an image; not himself."

Responding to questions from the district court, Dr. Cloninger asserted Whittington was suppressing information "that would be really helpful to just knowing what the facts were so that a defense could be mounted." The district court directly asked Dr. Cloninger what information Whittington was suppressing with respect to the charges in this case. Dr. Cloninger admitted he did not know what information Whittington had suppressed related to the pending charges. Dr. Cloninger inferred Whittington was suppressing information related to the charges because Dr. Cloninger observed other instances where Whittington suppressed information he was ashamed to face, and Whittington's responses to the TCI "confirms the impression there is a lot of repressed material."

On cross-examination, Dr. Cloninger testified Whittington (1) was competent to understand the nature of the proceedings against him; (2) knew what he was charged with and understood the elements of those charges; (3) recalled previously pleading guilty to identical charges in 2002; and (4) was aware of, and had elected to exercise, his constitutional rights to stand trial, present evidence, and testify on his own behalf. Dr. Cloninger acknowledged that Whittington had served in the United States Air Force for a number of years, working both in security and accounting or industrial engineering, and after Whittington left the Air Force, Whittington worked in business and served as a counselor. Dr. Cloninger noted Whittington had an undergraduate degree in sociology but claimed to have a degree in economics, and Whittington falsely represented he had an MBA from Webster University.

-4-

Dr. Cloninger conceded one of the key factors leading Dr. Cloninger to believe Whittington was incompetent was Whittington's refusal to accept a plea bargain despite his guilt. The following exchange took place during the hearing:

Dr. Cloninger:      But what's important: Is that he can't admit his guilt to himself or to anyone else. And so we get a variety of explanations. Whatever situation I asked Mr. Whittington about, this was also his explanation about why it was not his fault. And that's the key in my conclusions about his mental status.

Government:      Isn't one of the keys, Dr. Cloninger, that you've concluded that he is guilty?

Dr. Cloninger:      Is it a key? I think that the evidence that I saw presented by– in the summary report and his explanations . . . for these charges and the documentation to the IRS really is pretty damning.

The government continued, "Is it your judgment that [Whittington] is guilty and that he can't accept his guilt?" Dr. Cloninger answered, "Correct." The government later asked, "Your statement in your report is that, 'It is not logical to refuse a plea agreement for a shorter sentence in the face of strong evidence for which there is no reasonable, alternative explanation other than his personal guilt.' Is that your view?" Dr. Cloninger responded, "Yes." Dr. Cloninger later stated:

[I]t's true that what really struck [defense counsel] and then me is this response to the earlier plea offer; that even when confronted with the fact that he's got a strong evidentiary base against him; and he's offered two years instead of five years . . . there was certainly a difference in what he could have gotten if he had accepted the plea then and not made the prosecution go to all the trouble of preparing for trial . . . it just, you know, strikes you as unreasonable. And you wonder, "[w]hat is going on in a person that they would behave in that fashion?"

The court then asked Dr. Cloninger, "[I]f [Whittington] were able to accept guilt and enter a plea to one or more of these counts, would you still have the conclusion that he was unable to assist in his defense?" Dr. Cloninger eventually responded, "I think probably I would have said, '[w]ell, I guess his ability to face the facts and access the truths is adequate to make a reasonable decision, because that decision seems reasonable.'"

Dr. Cloninger further explained his competency finding was based, in part, on Whittington's inability to provide an "effective" defense. Dr. Cloninger stated:

> [W]hat I was really evaluating was how good are Mr. Whittington's arguments and explanations and providing information that would assist [defense counsel] to defend him. And I didn't feel that his simplistic answer that, "It is never my fault. It is always someone else's fault" would really help and assist [defense counsel] in defending him. And that really . . . gets to the consensus of whether he is competent to assist [defense counsel] in his own defense. I think his preoccupation is to defend his self-image of himself; not to assist [defense counsel] to deal with the facts in an effective manner.

The government elicited testimony from Dr. Cloninger about the various defenses Whittington had raised, with some factual bases, and Dr. Cloninger acknowledged it was not necessary for Whittington to provide information to prove his innocence in order to assist defense counsel.

At the close of the hearing, the district court set forth its findings and concluded Whittington was competent to stand trial. On May 13, 2008, a jury found Whittington guilty on nine counts of willfully aiding in the preparation of false individual income tax returns. Whittington now appeals, claiming the district court clearly erred by finding Whittington competent to stand trial.

## II. DISCUSSION

### A. Standard of Review

"Determining whether a defendant is competent to stand trial is committed to the discretion of the district court." United States v. Ghane, 490 F.3d 1036, 1040 (8th Cir. 2007) (citation omitted). The "competency determination is a factual finding we affirm 'unless clearly arbitrary or unwarranted, or clearly erroneous.'" United States v. Cook, 356 F.3d 913, 918 (8th Cir. 2004) (quoting United States v. Voice, 627 F.2d 138, 141 (8th Cir. 1980)).

### B. Burden of Proof

Congress has not set forth which party has the burden of proving whether a defendant is competent to stand trial. See 18 U.S.C. § 4241(d). The relevant statute states, "If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent . . . the court shall commit the defendant to the custody of the Attorney General." Id. This court's opinions on the issue are inconsistent. Compare United States v. Denton, 434 F.3d 1104, 1112 (8th Cir. 2006) (stating "[t]he burden rests with the defendant to demonstrate that he was not competent to stand trial"), and United States v. Jimenez-Villasenor, 270 F.3d 554, 559 (8th Cir. 2001) (declaring "the burden of persuasion rests with [the defendant] to show that he was incompetent to stand trial by a preponderance of the evidence"), with United States v. Maret, 433 F.2d 1064, 1067 (8th Cir. 1970) (concluding "once the defendant offers evidence of his insanity, the burden of proving legal sanity is on the government").

There is presently a split among other circuits as to which party has the burden of proof at a competency hearing. The Fourth and Tenth Circuits place the burden of proof on the defendant to prove incompetence. See United States v. Robinson, 404 F.3d 850, 856 (4th Cir. 2005); United States v. Smith, 521 F.2d 374, 377 (10th Cir. 1975). In contrast, the Third, Fifth, Seventh, and Ninth Circuits place the burden of proof on the government to prove competence. See United States v. Teague, 956 F.2d

1427, 1431 n.10 (7th Cir. 1992); <u>United States v. Frank</u>, 956 F.2d 872, 875 (9th Cir. 1991); <u>United States v. Velasquez</u>, 885 F.2d 1076, 1089 (3d Cir. 1989); <u>United States v. Hutson</u>, 821 F.2d 1015, 1018 (5th Cir. 1987).

The Eleventh Circuit has taken the unique position that the competency statute "arguably contemplates that the burden will lie with the party making a motion to determine competency." <u>United States v. Izquierdo</u>, 448 F.3d 1269, 1276, 1278 (11th Cir. 2006). The Second Circuit has declined to reach the issue, noting, "'[t]he allocation of the burden of proof to the defendant will affect competency determinations only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent.'" <u>United States v. Nichols</u>, 56 F.3d 403, 410 (2d Cir.1995) (quoting <u>Medina v. California</u>, 505 U.S. 437, 449 (1992) (interpreting state law)).

The United States Supreme Court has not directly addressed the burden issue in § 4241(d). In a case where the Supreme Court addressed the constitutionality of a state requiring a defendant to prove incompetence by clear and convincing evidence, the Court reasoned, "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence." <u>Cooper v. Oklahoma</u>, 517 U.S. 348, 362 (1996) (citing 18 U.S.C. § 4241 and referring to the burden of proof in federal cases).

The guidance of the Supreme Court, and the recent precedent of this circuit, support the government's position that the burden is on the defendant to prove incompetence by a preponderance of the evidence. <u>See</u> <u>Cooper</u>, 517 U.S. at 362; <u>Denton</u>, 434 F.3d at 1112. <u>See</u> <u>also</u> <u>Toua Hong Chang v. Minnesota</u>, 521 F.3d 828, 832 n.3 (8th Cir. 2008) (citation omitted) ("When there is an intra-circuit split, we are free to choose which line of cases to follow."). We need not address the burden of proof issue further because we conclude the district court's finding of competency in this case did not depend upon the allocation of the burden of proof. <u>See</u> <u>Nichols</u>, 56

F.3d at 410. As discussed below, Whittington did not meet any ultimate burden allocated to him. Even if the burden were on the government to prove Whittington's competence, the government met its burden.

### C.    District Court's Competency Determination

Under 18 U.S.C. § 4241(a), a district court is required to grant a motion requesting a competency hearing when "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." After the hearing, a defendant will be found "mentally incompetent to stand trial if a preponderance of the evidence indicates that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Ghane, 490 F.3d at 1040 (citing 18 U.S.C. § 4241(d)). "The district court may base its competency decision on numerous factors, 'including expert medical opinions and the court's observations of the defendant's demeanor.'" Id. (quoting United States v. Robinson, 253 F.3d 1065, 1067 (8th Cir. 2001)). "Presence of a mental illness does not equate with incompetency to stand trial." Feguer v. United States, 302 F.2d 214, 236 (8th Cir. 1962) (citations omitted). "[E]ven expert opinion on competency rises no higher than the reasons on which it is based; it is not binding upon the trier of the facts." Id. (citations omitted).

At the conclusion of Whittington's competency hearing, the district court conducted a thorough analysis of Whittington's competency and made various factual findings. The district court noted Whittington had a lengthy career in the military and was honorably discharged; completed college, although he claimed to have a degree in economics when it was actually in sociology; did some work toward an MBA, which he never completed, but often represented he had; performed a series of jobs after leaving the military, eventually beginning a tax preparation business; and incurred a prior conviction for filing false tax returns. The district court also found

Whittington understood the nature and consequences of the pending charges, including the possibility of a prison sentence, and Whittington had provided information to, and had communicated with, defense counsel.

The district court recognized Whittington asserted his innocence and provided his attorney "evidence of possible defenses." The district court discussed the following four defenses Whittington had raised: (1) the false statements in the tax returns were the result of problems with the software Whittington used; (2) the taxpayers provided fraudulent information, or noticed the errors and failed to correct them, and the taxpayers were trying to escape prosecution by putting the blame on Whittington; (3) Whittington randomly checked as many of the tax returns as he could, and any mistakes were unintentional; and (4) the IRS was targeting Whittington and retaliating against him for successfully defending "the Whitfields" in an IRS case. Thus, the district court reasoned, "[I]t is difficult to accept the statement in [Dr. Cloninger's] report that the defendant is . . . unable to assist in his defense . . . in view of the fact that the defendant has posited defenses."

The district court also determined "[s]ome of the testimony and the statements in [Dr. Cloninger's] report seem a little circular." The court took issue with Dr. Cloninger's conclusion that Whittington's competence would not be at issue if Whittington had admitted his guilt and accepted a guilty plea. The court explained, "That's a very troubling conclusion for me, because it seems to suggest that Mr. Whittington must be crazy if he is exercising his constitutional right to require the government to prove his guilt beyond a reasonable doubt and his constitutional right to have a jury determine whether the government has met its burden of proof." The court suggested Whittington had more defenses than many defendants who choose to go to trial, and concluded Whittington's decision to go to trial should not support a finding of incompetence.

The district court acknowledged Whittington had "puffed-up" his credentials, but believed Whittington exaggerated his qualifications to benefit himself and his tax preparation business. The district court had "no doubt" Whittington felt "a great sense of shame and embarrassment," because Whittington held a position in the community as a pastoral counselor and a businessman. However, the district court found "the mere fact that Mr. Whittington has depression and a personality disorder," standing alone, is insufficient to establish that Whittington is incompetent. The court concluded, "I do not believe that a preponderance of the evidence establishes that the defendant suffers from a mental disease or defect that renders him mentally incompetent to the extent that he is either unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

"The first prong of the competency test requires the district court to determine if the defendant has 'a rational as well as factual understanding of the proceedings against him.'" Ghane, 490 F.3d at 1040 (quoting Robinson, 253 F.3d at 1067). The district court found Whittington had a clear understanding of the nature of the proceedings against him. That finding was not contested at the competency hearing, nor is it contested on appeal.

"The second prong of the competency test requires the district court to determine whether the defendant is able to assist properly in his defense." Id. Defense counsel presented evidence at the competency hearing in an attempt to demonstrate Whittington was unable to assist defense counsel in Whittington's defense. The district court noted Whittington had maintained his innocence, posited various defenses, and elected to go to trial. The district court discussed Whittington's communication with defense counsel, and Whittington's refusal to accept a plea agreement. The district court voiced concern with Dr. Cloninger's analysis that Whittington's failure to accept a plea agreement was indicative of irrational decision making, because Whittington had a constitutional right to go to trial. The district court also pointed out that Dr. Cloninger could not identify what information, if any,

Whittington is actually repressing. Dr. Cloninger admitted he based much of his finding of Whittington's inability to assist defense counsel on the fact Whittington's asserted defenses were not "effective" and Whittington had not provided "good" explanations. Dr. Cloninger accepted Whittington may, quite simply, just not have a good explanation to offer.

After the district court discussed its factual findings, the district court concluded Whittington was able to assist in his own defense, thus satisfying the second prong of the competency analysis. The district court's factual findings and competency findings are supported by substantial evidence in the record. Thus, the district court's finding by a preponderance of the evidence that Whittington was competent to stand trial was not arbitrary, unwarranted, or clearly erroneous.

## III.   CONCLUSION

We approve the district court's sound reasoning and affirm the district court's judgment.

_____