# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1309

_____

United States of America

*Plaintiff - Appellee*

v.

Robert James Jefferson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 23, 2015
Filed: March 14, 2016

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Robert James Jefferson, born in October 1977, joined the 6-0-Tres gang in 1993 and soon began participating in the St. Paul gang's violent criminal activity. In 1998, after a six-week trial, a federal jury convicted Jefferson of conspiracy to distribute cocaine and crack cocaine; two substantive drug trafficking offenses in 1997; the firebombing murder of five young children in February 1994, when Jefferson was sixteen; and the drive-by shooting of a drug debtor and an innocent

bystander in February 1995, when Jefferson was seventeen. Consistent with the then-mandatory Sentencing Guidelines, the district court sentenced Jefferson to life in prison; we affirmed the convictions and sentence on direct appeal. United States v. Jefferson, 215 F.3d 820 (8th Cir.), cert. denied, 531 U.S. 911 (2000).

In Miller v. Alabama, 132 S. Ct. 2455, 2469 (2012), the Supreme Court held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." Jefferson then filed a petition under 28 U.S.C. § 2255(a), urging that he be resentenced in light of Miller. Consistent with the Supreme Court's recent decision that Miller announced a substantive rule of constitutional law that retroactively applies in post-conviction proceedings, Montgomery v. Louisiana, 136 S. Ct. 718, 736 (2016), the district court[1] granted the petition, vacated the 1998 sentence, and set the case for resentencing. After a two-day hearing, the district court varied downward from the now-advisory guidelines range of life in prison and imposed a sentence of 600 months in prison.[2] United States v. Jefferson, Cr. No. 97-276, 2015 WL 501968, at *8 (D. Minn. Feb. 5, 2015). Jefferson appeals the 600-month sentence. We affirm.

## I.

Jefferson first argues that his 600-month sentence violates the Eighth Amendment because the constitutional prohibition against cruel and unusual punishments is a "categorical bar on life without parole for juveniles." Jefferson

---

[1]The Honorable Michael J. Davis, then Chief Judge of the United States District Court for the District of Minnesota.

[2]Specifically, the court imposed concurrent sentences of 120 and 48 months for the drug trafficking counts; 600 months for each of the five 1994 murders; 120 months for the 1995 attempted murder of a drug debtor and for two conspiracy to murder counts; and 240 months for the 1995 drive-by shooting of the bystander.

acknowledges that the Supreme Court in Miller expressly declined to consider this issue. See 132 S. Ct. at 2469. But he contends that his conclusion "draws inexorably" from the Court's reasoning in Roper v. Simmons, 543 U.S. 551, 569 (2005), in Graham v. Florida, 560 U.S. 48, 68 (2010), and in Miller. Imposing a *de facto* life sentence on a juvenile, he asserts, "does not meet contemporary standards of decency." We review this constitutional challenge to a sentence *de novo*. See United States v. Sykes, 809 F.3d 435, 439 (8th Cir. 2016).

Roper categorically prohibited imposing the death penalty on a juvenile offender. 543 U.S. at 578. Graham categorically held that, if a State imposes a life sentence on a juvenile offender who did not commit homicide, it must provide "some realistic opportunity to obtain release before the end of that term." 560 U.S. at 82. Miller categorically held that the two mandatory sentencing schemes at issue violated the "principle of proportionality" underlying the Eighth Amendment ban on cruel and unusual punishments by "requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes." 132 S. Ct. at 2475.[3]

The Court in Miller did not hold that the Eighth Amendment categorically prohibits imposing a sentence of life without parole on a juvenile offender. Rather, the Court held that the *mandatory* penalty schemes at issue prevented the sentencing judge or jury from taking into account "that the distinctive attributes of youth

---

[3]The Supreme Court has not yet applied its constitutional decision in Miller to a life sentence imposed by a federal court. Miller would no doubt apply to a life sentence mandated by a federal statute, such as 18 U.S.C. § 1959(a)(1). But applying Miller to a life sentence imposed when the mandatory guidelines range was life, and more particularly to a life sentence imposed under the advisory guidelines, raises more difficult questions we need not decide in this case. Both parties endorsed the district court's prudent decision to conduct resentencing under the advisory guidelines, applying Miller's principles.

diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." Id. at 2465. The Court recognized that "about 15% of all juvenile life-without-parole sentences [then being served]" were non-mandatory sentences imposed at the discretion of a judge or jury. Id. at 2471-72 n.10. Rather than include those sentences in a broader categorical ban, the Court concluded only "that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles," life without the possibility of parole. Id. at 2475.

Jefferson's 600-month sentence does not fall within Miller's categorical ban on *mandatory* life-without-parole sentences. Jefferson was resentenced under now-advisory federal guidelines after a hearing in which the district court carefully and thoroughly applied the teaching of Roper, Graham, and Miller "that children are constitutionally different from adults for purposes of sentencing." Miller, 132 S. Ct. at 2464. The Supreme Court in Roper affirmed a discretionary sentence of life without parole for a juvenile homicide offender. 543 U.S. at 560. Our sister circuits have uniformly declined to apply Miller's categorical ban to discretionary life sentences. See Davis v. McCollum, 798 F.3d 1317, 1321-22 (10th Cir. 2015); Croft v. Williams, 773 F.3d 170, 171 (7th Cir. 2014); Evans-Garcia v. United States, 744 F.3d 235, 240-41 (1st Cir. 2014); Bell v. Uribe, 748 F.3d 857, 869 (9th Cir. 2013), cert. denied, 135 S. Ct. 1545 (2015). And in United States v. Barraza, we affirmed a federal life sentence for a defendant who committed crimes including homicide at the age of sixteen. 576 F.3d 798, 808 (8th Cir. 2009), cert. denied, 562 U.S. 842 (2010). Consistent with these authorities, we reject Jefferson's categorical challenge to his sentence. Thus, we need not consider his contention that Miller's categorical ban applies to his "*de facto* life sentence."

**II.**

Alternatively, Jefferson argues that his 600-month sentence is substantively unreasonable because the district court failed to properly account for the discretionary factors in the sentencing of children recognized in <u>Roper</u>, <u>Graham</u>, and <u>Miller</u>. Specifically, Jefferson argues the district court (i) gave "short shrift" to evidence of his postsentencing rehabilitation; (ii) failed to weigh the 18 U.S.C. § 3553(a) sentencing factors "as informed by recent Eighth Amendment jurisprudence regarding juveniles"; and (iii) failed to avoid unwarranted sentencing disparity, as § 3553(a)(6) requires, because the juvenile who participated with Jefferson in the fire-bombing murders received a 60-month sentence.

We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. <u>See</u> <u>United States v. Feemster</u>, 572 F.3d 455, 461 (8th Cir. 2009) (en banc), applying <u>Gall v. United States</u>, 552 U.S. 38, 51 (2007). A district court abuses its discretion when it fails to consider a relevant factor that should have received significant weight. <u>Id.</u> Though the Supreme Court in <u>Miller</u> did not categorically bar discretionary decisions to impose life sentences on juveniles, the Court ruled that a sentencing court must make "individualized sentencing decisions" that take into account "the distinctive attributes of youth" before it imposes a life-without-parole sentence on a juvenile. 132 S. Ct. at 2464-65 & n.4. "An offender's age . . . is relevant to the Eighth Amendment," the Court explained, "and so criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed." <u>Id.</u> at 2466, quoting <u>Graham</u>, 560 U.S. at 76. Accordingly, we agree with Jefferson that a federal court considering whether to impose a life-without-parole sentence on a juvenile homicide offender under the federal advisory guidelines

regime must weigh the § 3553(a) sentencing factors "as informed by" the Supreme Court's Eighth Amendment jurisprudence.[4]

We reject Jefferson's substantive unreasonableness contention because the district court made an individualized sentencing decision that took full account of "the distinctive attributes of youth," explaining its sentence in a thorough, 24-page Memorandum of Law & Order. The court found that several factors mitigated against a life sentence, all relating to Jefferson's youth at the time of the murders and his subsequent, "extraordinary" rehabilitation in prison. Against those factors, the court weighed the seriousness of Jefferson's crimes and his continued refusal to accept responsibility for the murders. The court varied downward from Jefferson's advisory guidelines range of life in prison and imposed a lesser, albeit substantial sentence that was not substantively unreasonable.

(i) The district court did not give "short shrift" to evidence of Jefferson's postsentencing rehabilitation. The court in its Order carefully reviewed this evidence:

> Jefferson has demonstrated that he is amenable to rehabilitation. In the time that he has been in prison, approximately sixteen and one-half years, Jefferson has no disciplinary history. In addition, Jefferson completed 24 courses of study, including college-level courses such as logic, ethics and ancient philosophy. He has been continuously employed in prison, working in food service, sanitation and as a medical orderly. In addition, Jefferson convenes a weekly session of Bible

---

[4]An individual sentence violates the Eighth Amendment if it is "grossly disproportionate to the crime." Graham, 560 U.S. at 59-60 (quotation omitted); see Harmelin v. Michigan, 501 U.S. 957, 998 (1991) (Kennedy, J., concurring). Jefferson does not make this distinct Eighth Amendment argument, no doubt because the success of such challenges in non-capital cases is "exceedingly rare." Ewing v. California, 538 U.S. 11, 21 (2003) (quotation omitted); see United States v. Humphrey, 753 F.3d 813, 818 (8th Cir.), cert. denied, 135 S. Ct. 385 (2014).

study. Prison staff have commented that Jefferson serves as a positive role model for other inmates in the Life Style Intervention Class.

Deeming Jefferson's rehabilitation an "extraordinary success," the court concluded that it "clearly weighs in favor of a finding that Jefferson is amendable to rehabilitation and would support a sentence other than life in prison."

(ii) Likewise, the district court did not fail to weigh the § 3553(a) factors as informed by the Supreme Court's juvenile sentencing jurisprudence. In deciding to vary downward from the advisory range of life in prison, the court acknowledged that "children are constitutionally different from adults for purposes of sentencing." It then evaluated the extent to which immaturity, failure to appreciate risk, impulsiveness, peer pressure, and a difficult upbringing -- the mitigating factors of youth emphasized in Miller, 132 S. Ct. at 2465 -- contributed to Jefferson's criminal activity. In evaluating whether Jefferson was amenable to rehabilitation, the court examined Jefferson's prison record and consulted research on juvenile behavior. The court also considered the hearing testimony of Jefferson, his uncle, and a clinical psychologist who interviewed Jefferson in 1998 and again in 2012. The district court did not abuse its discretion by failing to consider a relevant factor, Jefferson's youth, that should have received significant weight.

In determining that 600 months in prison was an appropriate resentence, the district court properly gave significant weight to the extreme severity of Jefferson's crimes -- causing "the horrific deaths of five young, innocent children," attempting to murder another man, and distributing "vast amounts of controlled substances." The court also properly considered that "Jefferson has not accepted full responsibility for his actions." See United States v. Harlan, No. 15-1552, slip op. at 11, --- F.3d ---- (8th Cir. Feb. 16, 2016). "[T]he district court has wide latitude to weigh the § 3553(a) factors and assign some factors greater weight than others." United States v. Thibeaux, 784 F.3d 1221, 1227 (8th Cir. 2015); see United States v. Boneshirt, 662

F.3d 509, 519-20 (8th Cir. 2011) (affirming 576-month sentence for juvenile homicide offender), cert. denied, 132 S. Ct. 1613 (2012).  There was no abuse of the court's substantial sentencing discretion.

(iii) Contrary to Jefferson's suggestion, the district court carefully considered the need to avoid unwarranted sentencing disparity by reviewing decisions from other districts that have applied Miller in resentencing juvenile homicide offenders to substantial federal prison terms, rather than life in prison.  See, e.g., United States v. Byrant, 609 F. App'x 925, 927-28 (9th Cir. 2015) (affirming an 80-year sentence).  The juvenile who participated in the firebombing murders with Jefferson was thirteen years old at the time.  Too young to be tried as an adult, he pleaded guilty to aggravated assault.  There is no abuse of discretion when sentencing disparity arises from "legitimate distinctions" between participants in the same crimes.  United States v. Johnson, 688 F.3d 444, 448 (8th Cir. 2012), cert. denied, 133 S. Ct. 1647 (2013).

Finally, Jefferson argues the district court committed procedural error when it failed to grant a downward departure due to his young age at the time of the crimes.  See U.S.S.G. § 5H1.1.  This contention is without merit.  "A district court's refusal to grant a downward departure under the sentencing guidelines is unreviewable unless the court had an unconstitutional motive in denying the request or failed to recognize that it had the authority to depart downward."  United States v. Simms, 695 F.3d 863, 866 (8th Cir. 2012) (quotation omitted).

The Third Amended Judgment of the district court is affirmed.

_____