# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2718
_____

United States of America

*Plaintiff - Appellee*

v.

Leobardo B. Barraza

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 24, 2020
Filed: December 11, 2020
_____

Before SMITH, Chief Judge, BENTON and KOBES, Circuit Judges.
_____

SMITH, Chief Judge.

Leobardo B. Barraza was convicted of kidnapping Maria Eloiza and her five-year-old son, resulting in the deaths of both. *See* 18 U.S.C. §§ 1201(a)(1) and 2. Barraza was 16 years old at the time he committed the offense. The district court[1]

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

sentenced Barraza to the statutorily mandated term of life imprisonment. *See* 18 U.S.C. § 1201(a). Subsequently, the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller v. Alabama*, 567 U.S. 460, 465 (2012). Based on *Miller*, the district court granted Barraza's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and ordered resentencing. The district court sentenced Barraza to 50 years' imprisonment. On appeal, Barraza argues that the district court (1) clearly erred in finding that Barraza was competent to proceed to resentencing, (2) plainly erred in applying U.S.S.G. § 2A1.1(a) to an offender who was a juvenile at the time of the offense, and (3) imposed a substantively unreasonable sentence. We affirm.

## I. *Background*

In 1998, Barraza, then 16 years old, along with an adult friend, convinced Eloiza to travel with them from Chicago, Illinois, to Mexico to bring back drugs. Eloiza brought her young son with her. The group was driving through Franklin County, Missouri, when Barraza and the adult friend stopped in an isolated wooded area and raped Eloiza. They then killed Eloiza and her son. Barraza was arrested in 2006 and charged with kidnapping resulting in death, in violation of 18 U.S.C. §§ 1201(a)(1) and 2.

Prior to trial, upon motion from Barraza's counsel, the district court ordered that Barraza undergo a psychological examination to determine whether he was competent to stand trial. After reviewing the report from the medical facility within the Bureau of Prisons, the district court determined that Barraza was competent to proceed to trial.

The jury found Barraza guilty, and the district court sentenced Barraza to the statutorily mandated sentence of life imprisonment. *See* 18 U.S.C. § 1201(a).

Subsequently, the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's

prohibition on 'cruel and unusual punishments.'" *Miller*, 567 U.S. at 465. Based on *Miller*, the district court granted Barraza's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and ordered resentencing.

On June 12, 2017, almost three years after the district court ordered resentencing, it held a status hearing. The court acknowledged that resentencing had been delayed because of Barraza's "constant filings." Tr. of Status Hr'g at 2, *United States v. Barraza*, No. 4:06-cr-00476 (E.D. Mo. 2017), ECF No. 176. According to the court, "most" of Barraza's "multiple filings" were "incomprehensible." *Id.* at 3. The court expressed concern over Barraza's "competency to proceed" with resentencing and defense counsel's "difficulty communicating with [Barraza]." *Id.* The district court sua sponte ordered a psychological examination to determine whether Barraza was competent to proceed with resentencing.

On September 29, 2017, Dr. Kari M. Schlessinger issued a report on behalf of the Bureau of Prisons opining that Barraza did not have a mental disease or defect and had the capacity to assist his defense counsel. Barraza countered with the report of Dr. C. Robert Cloninger, dated January 27, 2018. Dr. Cloninger's opinion concluded that Barraza suffers from a mental disease or defect and is unable to assist his defense counsel. The parties agreed to submit the issue of Barraza's competency to the district court, relying on the written reports of Dr. Schlessinger and Dr. Cloninger.

On October 17, 2018, the district court found by a preponderance of the evidence that Barraza was suffering from a mental disease or defect that rendered him mentally incompetent to proceed with resentencing. The court ordered Barraza committed to the Attorney General's custody for treatment in a suitable facility for up to four months to determine whether a substantial probability existed that Barraza would gain the capacity to proceed.

In May 2019, the Bureau of Prisons notified the district court via letter that Dr. Allyson N. Wood had completed a forensic examination of Barraza and attached

Dr. Wood's report. It also enclosed a "Certificate of Restoration of Competency to Stand Trial" for Barraza.

When Dr. Wood examined Barraza, Barraza had been housed at the Federal Medical Center to regain competency for resentencing since December 27, 2018. Dr. Wood based her opinion on her interview with and personal observations of Barraza in the Federal Medical Center, "the comments of [Federal Medical Center] staff members with ongoing opportunities to observe Mr. Barraza's behavior throughout the course of the evaluation," and Barraza's institutional record in the Bureau of Prisons since his 2006 imprisonment. Psychiatric Report at 4, *United States v. Barraza*, No. 4:06-cr-00476 (E.D. Mo. 2019), ECF No. 208. In her report, Dr. Wood opined that

> Mr. Barraza does not appear to be experiencing a mental illness or defect. Behavioral observations, record review, and clinical interviews did not reflect symptoms consistent with a mood, anxiety, or psychotic disorder. Mr. Barraza's lack of cooperation with his attorneys is not due to a mental health condition, but based on mistrust stemming from limited communication. He presented with an overall calm, stable mood. There were no apparent signs of paranoid or delusional thinking. In referencing delusional disorder, Mr. Barraza stated, "So everyone who sues someone is delusional?" While his statements regarding financial compensation are improbable, they did not appear to be derived from a delusional thought process. Rather, he feels entitled to such compensation due to beliefs consistent with sovereign citizen ideology.
>
> Although these beliefs are not acknowledged by the United States government as legally sound, given that this is a cultural belief that is held amongst a group of people, it is not considered delusional in nature.

*Id.* at 6–7.

Dr. Wood described the sovereign citizens group to which Barraza belongs as a "loosely connected [group of] individuals that hold beliefs that challenge the legitimacy of the United States government and the judicial system." *Id.* at 7.

Dr. Wood opined that Barraza "is not currently suffering from a mental disease or defect which renders him incompetent to stand trial." *Id.* at 8. To support her opinion, Dr. Wood noted that Barraza (1) "demonstrated a factual understanding of the nature and processes of the criminal proceedings"; (2) "remained on topic and did not derail or provide tangential remarks"; (3) exhibited "thought processes [that] were organized, logical, and goal-oriented"; (4) "was able to carry on a rational conversation for an extended period of time and responded relevantly to questions"; (5) "has the capacity to permit the proceedings to go forward and assist in his defense with counsel" but has "willfully refused to assist" because he mistrusts his defense counsel; (6) "discussed length of sentencing and his perspective of such in a rational manner"; (7) was capable of "discerning and disclosing information accurately, testifying sensibly and relevantly, and thoughtfully considering his alternatives"; and (8) did not have impaired "reasoning, problem-solving, [or] decision-making abilities." *Id.* at 8–9.

At Barraza's resentencing hearing, the district court adopted Dr. Wood's findings that Barraza was competent to proceed with resentencing. Barraza's counsel objected to the district court's competency ruling based on Dr. Cloninger's prior report. The district court stressed, however, that it was relying on Dr. Wood's more recent report. Additionally, the district court cited Barraza's sentencing memorandum, which "listed an assortment of courses in the prison system that [Barraza] has successfully completed." Resentencing Hr'g at 5, *United States v. Barraza*, No. 4:06-cr-00476 (E.D. Mo. 2019), ECF No. 225. Barraza's successful completion of the courses also "le[d] th[e] [c]ourt to believe that [Barraza] [was] certainly competent to proceed." *Id.*

Thereafter, Barraza requested that the district court take "judicial notice" of several documents. *Id.* at 6. The court advised Barraza that it had "received many

hundreds and hundreds of pages of filings from [him]" that were almost all "unintelligible," "ma[d]e no sense from a legal standpoint," and were "not the least bit rational." *Id.* at 7. The court declared as "frivolous" Barraza's effort "to sue everybody involved in this case for many billions of dollars" and overruled Barraza's motions. Barraza responded, "Could you give me the product of the offer, the check, please, that you're asking me to exchange?" *Id.* at 8. The court replied that Barraza's statement "ma[d]e[] no sense" because the case "does not involve a check. It involves a resentencing of [Barraza's] conviction for murder." *Id.* Barraza then responded that he did not understand the court and inquired whether the court was prohibiting him from "present[ing] evidence in [his] own case." *Id.* The court answered that Barraza could only present evidence pertaining to his resentencing. Barraza maintained that he was "a third party taking part in this case" and was present "as a visitor." *Id.* The court corrected Barraza, telling him he was "here as a criminal defendant." *Id.* When Barraza then insisted that "all of this has been submitted legally at the Secretary of State's office," the court stated that "[i]t has not been submitted legally. That's all been rejected." *Id.* at 8–9. The court proceeded with resentencing.

The district court calculated a total offense level of 43 and a criminal history category of I. The statute provided for life imprisonment, *see* § 18 U.S.C. §§ 1201(a), and the Guidelines range was life imprisonment. *See* U.S.S.G. § 2A1.1. Barraza's counsel conceded that "that is the accurate guideline." Resentencing Hr'g at 9.

Barraza interrupted the hearing and stated that he "ha[d] an order asking that [the court] set [him] free." *Id.* at 10. He represented that the order was "from the Superior Court of Georgia" and was "certified." *Id.* The court denied Barraza's request.

The government recommended a 50-year sentence. Barraza's counsel reminded the court of *Miller*'s mandate to "imagine Mr. Barraza as a 16-year-old." *Id.* at 16. The district court "agree[d] completely." *Id.* Barraza's counsel "emphasize[d] [that] *Miller* talks about how we punish 16-year-olds" and how the

court must "look at the individual as the child who committed the crime and figure out what's important." *Id.* at 17. The court "agree[d] with all of that." *Id.* at 18. Defense counsel argued that Barraza "was a 16-year-old, immature child that got in way over his head, didn't have the maturity or hadn't developed the skills to get around it." *Id.* at 20. Considering the *Miller* factors, defense counsel requested a sentence of less than 50 years.[2]

During Barraza's allocution, he expressed views consistent with that of the sovereign citizens group. *See id.* at 21–25.

The district court resentenced Barraza to 50 years' imprisonment. Prior to imposing the sentence, the district court stated that it had "read very closely" his sentencing memorandum. *Id.* at 26. The court was "impressed" by Barraza's "institutional adjustment" and successful completion of courses. *Id.* The court also emphasized that it was "very much taking into consideration the fact that [Barraza] w[as] 16 when [he] committed these offenses" and noted that it viewed Barraza's case in light of *Miller. Id.*

In reaching its decision, the court compared sentences in other similar cases but noted that Barraza's case was "distinguishable in the sense that [it] is even more horrible than" those cases. *Id.* The court labeled Barraza's "kidnapping and murder of a young woman and a five-year-old child" as "heinous[,] gruesome[,] and horrible." *Id.* at 26–27. The court acknowledged that the statutory sentence was life imprisonment but that Barraza committed the offense when he was 16 years old.

"[I]n view of the evidence that was presented at trial," the court imposed a sentence of 50 years' imprisonment. *Id.* at 27. Specifically, the court found that "the kidnapping and murder of the adult female victim" was "premeditated." *Id.* Barraza had "fabricated a story to the adult victim" to get her to leave her home, "feigned car trouble and pulled over to get the victim out of the car," and "raped the female victim

---

[2]In his sentencing memorandum, Barraza had requested a 30-year sentence.

and murdered her, after which [he] struck the child victim on the head and strangled him." *Id.* The court imposed the 50-year sentence after considering the advisory Guidelines range, the 18 U.S.C. § 3553(a) factors, and "the sentencing objectives of just punishment, general deterrence, and incapacitation." *Id.*

Barraza's counsel objected to the 50-year sentence as "outside of the mandate of *Miller*." *Id*. at 29. The court responded that Barraza's sentence was "by way of a downward variance from the sentencing guidelines, because the sentencing guidelines provide for life." *Id.*

## II. *Discussion*

On appeal, Barraza argues that the district court clearly erred in finding him competent to proceed with resentencing. He also challenges his 50-year sentence.

## A. *Competency*

Barraza argues that the district court's competency determination at sentencing was clearly erroneous because nothing had changed since the district court's prior finding of incompetence in October 2018. Barraza maintains that Dr. Wood's psychological evaluation did not cure alleged omissions in Dr. Schlessinger's prior report. According to Barraza, "[b]oth [Bureau of Prisons] evaluations used as their foundation the outdated 2008 mental screening done years before he indicated any financial debt owed him by the government" as a sovereign citizen. Appellant's Br. at 28. In support of his argument, Barraza cites his "spontaneous[] and impulsive[]" assertions at his resentencing. *Id.* at 24. He argues that the district court should have relied on Dr. Cloninger's prior report, as it did when it found him incompetent to proceed to resentencing in 2018.

"Determining whether a defendant is competent is committed to the discretion of the district court." *United States v. Contreras*, 816 F.3d 502, 514 (8th Cir. 2016) (cleaned up). "We review a district court's competency determination—a detailed and fact-intensive individualized analysis—for clear error." *United States v. Washington*, 968 F.3d 860, 864 (8th Cir. 2020). "We will affirm the district court's

factual finding as to competency unless it is clearly arbitrary or unwarranted, or clearly erroneous." *Contreras*, 816 F.3d at 514 (cleaned up).

"A defendant must be competent at all stages of the prosecution, including sentencing." *United States v. Dahl*, 807 F.3d 900, 904 (8th Cir. 2015). A defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and ha[ve] a rational as well as factual understanding of the proceedings against him" to be "competent to stand trial or face sentencing." *Id.* (quotation omitted). A defendant is mentally incompetent to proceed with trial or sentencing "if a preponderance of the evidence indicates that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *United States v. Whittington*, 586 F.3d 613, 618 (8th Cir. 2009) (quotation omitted).

To evaluate a defendant's competency, the district court must first "determine if the defendant has a rational as well as factual understanding of the proceedings against him." *Id.* at 619 (quotations omitted). It must then "determine whether the defendant is able to assist properly in his defense." *Id.* at 620 (quotation omitted). In determining whether a defendant is competent to proceed, "[t]he district court may base its competency decision on numerous factors, including *expert medical opinions* and the court's observations of the defendant's demeanor." *Id.* at 618 (emphasis added) (quotations omitted). "Presence of a mental illness does not equate with incompetency to stand trial." *Id.* (quotation omitted).

Here, the district court was entitled to base its competency determination on Dr. Wood's psychological evaluation of Barraza. *See Contreras*, 816 F.3d at 514 ("Based on the Bureau of Prisons psychiatrist's medical opinion, we hold that the district court did not clearly err in finding Contreras competent."). Dr. Wood's report—issued *after* Barraza's commitment to the Federal Medical Center for competency restoration treatment—was the most recent and persuasive report. Dr. Cloninger's report, on the other hand, was issued prior to Barraza's commitment to the Federal Medical Center for competency restoration treatment. Dr. Wood based

her opinion on her personal observations of and interactions with Barraza in the Federal Medical Center, "the comments of [Federal Medical Center] staff members with ongoing opportunities to observe Mr. Barraza's behavior throughout the course of the evaluation," and Barraza's institutional record in the Bureau of Prisons since his 2006 imprisonment. Psychiatric Report at 4.

Dr. Wood noted several facts in Barraza's record indicative of mental competency. Barraza (1) had incurred only one incident report in 2011 for using equipment contrary to instruction; (2) earned his GED in 2009; (3) "ha[d] not received psychological services or been prescribed psychotropic medication"; (4) "completed the 12-hour drug education class"; (5) "completed the 65-hour, independent psychology study course"; (6) "endorsed certification as a paralegal and in HVAC through inmate correspondence course[s]"; and (7) completed numerous educational courses. *Id.* at 5. Dr. Cloninger's prior report, in contrast, did not consider Barraza's institutional record since his 2006 imprisonment.

Barraza does not deny that he considers himself a part of the sovereign citizens group.[3] He disagrees, however, with Dr. Wood's assessment that his "statements regarding financial compensation" do not "derive[] from a delusional thought process" but instead from his "beliefs [that are] consistent with sovereign citizen ideology." *Id.* at 7. Dr. Wood supported her competency-to-proceed opinion with personal observations and evidence from the institution. In making its competency determination, the district court was entitled to rely on Dr. Wood's more recent opinion that Barraza was competent. We, therefore, hold that the district court did not clearly err in finding Barraza competent to proceed with resentencing.

---

[3] We have described "[s]overeign citizens [as] a loosely-affiliated group who believe government in the United States operates illegitimately and outside the bounds of its jurisdiction." *Waters v. Madson*, 921 F.3d 725, 732 n.4 (8th Cir. 2019).

B. *Sentencing*

Barraza raises two challenges to his 50-year sentence. First, he argues that "[t]he district court plainly erred by anchoring its resentencing choice to U.S.S.G. § 2A1.1(a)'s life-without-parole Guidelines range" to his case in light of *Miller v. Alabama*, 567 U.S. 460 (2012). Appellant's Br. at 38. Second, he argues that his sentence is substantively unreasonable.

We review for an abuse of discretion a district court's sentencing determination. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

1. *U.S.S.G. § 2A1.1*

We must first ensure that the district court did not commit "significant procedural error." *Id.* (quotation omitted). A district court commits procedural error when it, among other things, improperly calculates a defendant's Guidelines range. *Id.* However, "[i]f an alleged procedural error was not raised in the district court, we review it for plain error." *United States v. Hall*, 931 F.3d 694, 696 (8th Cir. 2019).

Because Barraza did not raise his objection to the application of § 2A1.1before the district court, we review for plain error the district court's application of § 2A1.1 to set a Guidelines range of life imprisonment. "To establish plain error, [Barraza] must prove that (1) there was error, (2) the error was plain, and (3) the error affected his substantial rights." *United States v. Miller*, 557 F.3d 910, 916 (8th Cir. 2009). "[O]nly if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings" will we "exercise our discretion to correct such an error." *Id.* (cleaned up). A prejudicial error is one that "affects a substantial right." *Id.* "In the sentencing context, an error was prejudicial only if there is a reasonable probability that the defendant would have received a lighter sentence but for the error." *Id.*

Here, Barraza was convicted of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1). The sentencing guideline for kidnapping cross-references U.S.S.G. § 2A1.1 for cases in which kidnapping resulting in death would qualify as

first-degree murder. *See* U.S.S.G. § 2A4.1(c)(1). Section 2A1.1 sets a base offense level of 43 for first-degree murder. The commentary to § 2A1.1 states:

> In the case of premeditated killing, life imprisonment is the appropriate sentence if a sentence of death is not imposed. A downward departure would not be appropriate in such a case. A downward departure from a mandatory statutory term of life imprisonment is permissible only in cases in which the government files a motion for a downward departure for the defendant's substantial assistance, as provided in 18 U.S.C. § 3553(e).

*Id.* cmt. 2(A).

Section 2A1.1 is silent concerning juvenile offenders. *See id.* As a result, Barraza maintains that application of § 2A1.1 did not comport with *Miller.* Specifically, he contends that "[b]ecause the Sentencing Commission has not amended Section 2A1.1(a) to create a range that incorporates the qualities of youth that make life in prison rarely justified, the [d]istrict [c]ourt's use of Section 2A1.1(a) as the 'starting point' and 'lodestar' framing its sentencing choice embodied plain error." Appellant's Br. at 38–39. [4]

The Supreme Court held in *Miller* "that the Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without possibility of parole for juvenile offenders." 567 U.S. at 479 (emphasis added). "The Supreme Court has not yet applied its constitutional decision in *Miller* to a life sentence imposed by a federal court. *Miller* would no doubt apply to a life sentence mandated by a federal statute …." *United States v. Jefferson*, 816 F.3d 1016, 1018 n.3 (8th Cir. 2016). We

---

[4]Barraza also challenges the district court's application of the § 2A1.1 cross-reference because "[t]he jury at [his] trial never found that he acted with an intent to kill." Appellant's Br. at 48. But this court has previously "rejected [a] defendant's argument that the district court violated *Alleyne* [*v. United States*], [570 U.S. 99 (2013),] by applying the § 2A1.1 cross-reference without having a jury act as the fact-finder." *United States v. Jackson*, 782 F.3d 1006, 1013 (8th Cir. 2015) (citing *United States v. Davis*, 753 F.3d 1361 (8th Cir. 2014) (per curiam)).

have previously declined to address the "more difficult question[]" of "applying *Miller* … to a life sentence imposed under the advisory guidelines." *Id.* (declining to address such questions because "[b]oth parties endorsed the district court's prudent decision to conduct resentencing under the advisory guidelines, applying *Miller*'s principles").

"The Court in *Miller* did not hold that the Eighth Amendment categorically prohibits imposing a sentence of life without parole on a juvenile offender." *Id.* at 1018. Instead, *Miller* imposes a "categorical ban on *mandatory* life-without-parole sentences." *Id.* at 1019. Like our sister circuits, we have "declined to apply *Miller*'s categorical ban to discretionary life sentences." *Id.*

"Though the Supreme Court in *Miller* did not categorically bar discretionary decisions to impose life sentences on juveniles, the Court ruled that a sentencing court must make 'individualized sentencing decisions' that take into account 'the distinctive attributes of youth' before it imposes a life-without-parole sentence on a juvenile." *Id.* (quoting *Miller*, 567 U.S. at 470 n.4, 472). "[A] federal court considering whether to impose a life-without-parole sentence on a juvenile homicide offender under the federal advisory guidelines regime must weigh the § 3553(a) sentencing factors 'as informed by' the Supreme Court's Eighth Amendment jurisprudence." *Id.* at 1020 (rejecting defendant's contention that his 600-month sentence was substantively unreasonable "because the district court made an individualized sentencing decision that took full account of 'the distinctive attributes of youth'"). "Under § 3553(a), a sentencing court 'shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes' of sentencing. In choosing an appropriate sentence, the court must examine 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *United States v. Sparks*, 941 F.3d 748, 755 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 1281, 206 L. Ed. 2d 264 (2020). A district court's "§3553(a) analysis satisfies *Miller*'s procedural requirement that the court consider the defendant's youth and its attendant characteristics before imposing a sentence of life without parole." *Id.*

We hold that the district court did not plainly err in calculating an advisory Guidelines range of life imprisonment under § 2A1.1. The Sentencing Guidelines are advisory. *Gall v. United States*, 552 U.S. 38, 46 (2007). The Supreme Court has directed that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 49. The advisory Guidelines are "the starting point and the initial benchmark." *Id.* In Barraza's case, the § 2A1.1 cross-reference *recommended* a life sentence. *See* U.S.S.G. § 2A1.1 cmt. 2(A). In accordance with *Gall*, the district court calculated an advisory Guideline range of life imprisonment.

After calculating the advisory Guidelines range, the district court, mindful of Barraza's age, weighed the § 3553(a) sentencing factors to decide whether to impose a life-without-parole sentence. *See Jefferson*, 816 F.3d at 1019. The district court expressly stated that it was imposing the 50-year sentence "pursuant to the provisions of Title 18, United States Code, Section 3553(a), and all the factors thereunder, [and] in view of the sentencing objectives of just punishment, general deterrence, and incapacitation." Resentencing Hr'g at 27. In determining the appropriate sentence, the district court indicated that it had "read very closely the memorandum that [Barraza's] lawyer prepared." *Id.* at 26. In that memorandum, Barraza's counsel extensively discussed *Miller*, Barraza's immaturity and youth at the time of the offense, Barraza's institutional adjustment, and the sentences imposed in other juvenile resentencings. The district court also indicated it was "very much taking into consideration the fact that [Barraza] w[as] 16 when [he] committed these offenses," "giving [Barraza] consideration under the *Miller* case," and "taking into consideration the dispositions that have been made in other similar cases." *Id.* The court distinguished Barraza's case from other juvenile resentencing cases, noting Barraza's "offense was heinous and gruesome and horrible" given that it involved the "kidnapping and murder of a young woman and a five-year-old child." *Id.* at 26–27. The court expressly acknowledged that Barraza committed the offense at age 16. The court, however, relied on the specific facts of the case, including the theory that Barraza's older friend coerced him. It imposed the 50-year sentence "in view of the evidence that was presented at trial." *Id.* at 27.

By analyzing the § 3553(a) factors, the district court "satisfie[d] *Miller*'s procedural requirement that the court consider the defendant's youth and its attendant characteristics before imposing" its 50-year sentence, a downward variance from the Guidelines range of life imprisonment. *Sparks*, 941 F.3d at 755.

## 2. *Substantive Reasonableness*

"In the absence of procedural error below, we 'should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *Feemster*, 572 F.3d at 461 (quoting *Gall*, 552 U.S. at 51).

Barraza argues that his 50-year sentence is substantively unreasonable because the district court "accord[ed] decisive weight to … [its] belief that [Barraza] premedi[t]ated the commission of murder which the jury never found and which exceeds by 8-to-22 years the sentences imposed in similar and more egregious juvenile murders in *Miller* resentencings." Appellant's Br. at 50.

Barraza's 50-year sentence is a below-Guidelines sentence. "[A] sentence below or within the Guidelines range is presumptively reasonable on appeal." *United States v. Canania*, 532 F.3d 764, 773 (8th Cir. 2008). "When a district court varies downward and sentences below a presumptively reasonable Guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further." *United States v. Canamore*, 916 F.3d 718, 721 (8th Cir. 2019) (per curiam) (quotation omitted); *see also Feemster*, 572 F.3d at 464 (stating that "it will be the unusual case" when this court reverses "a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable").

Barraza has not overcome the presumption of reasonableness. As explained *supra*, the district court analyzed the § 3553(a) factors and considered Barraza's age at the time of the offense. *See Jefferson*, 816 F.3d at 1019. The district court found that the "kidnapping and murder of the adult female victim" was "premeditated" "in

- 15 -

view of the evidence that was presented at trial." Resentencing Hr'g at 27. It distinguished Barraza's case from other juvenile resentencing cases based on the trial evidence, despite Barraza's attempts to argue he was coerced into helping his friend. Therefore, we hold that Barraza's 50-year sentence is substantively reasonable.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____